GRIEWAHN et al., Appellees,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.

[Cite as *Griewahn v. United States Fid. & Guar.
Co.*, 160 Ohio App.3d 311, 2005-Ohio-1660.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04 MA 191.

Decided March 28, 2005.

Tisone & Associates and Raymond J. Tisone, for appellees.

Freund, Freeze & Arnold, Jennifer Kirpatrick Nordstrom, and Michael J. Reuss, for appellant.

DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-appellant, United States Fidelity & Guaranty Company, appeals the decision of the Mahoning County Court of Common Pleas to deny USF&G's motion for summary judgment in a declaratory judgment action. USF&G raises two issues on appeal.

{¶ 2} First, USF&G contends that an excess insurance contract is not an "automobile liability or motor vehicle liability policy of insurance." The applicable version of R.C. 3937.18 defines an "automobile liability or motor vehicle liability policy of insurance" as either an umbrella policy or a policy that serves as proof of financial responsibility. This policy does neither. Thus, it is not an "automobile liability or motor vehicle liability policy of insurance" and is not subject to the mandates of R.C. 3937.18.

{¶ 3} Second, USF&G argues that its policy does not provide underinsured motorist coverage until a condition precedent is met even if its policy is subject to

R.C. 3937.18. This issue is relevant only if we found USF&G's arguments in the first issue meritless. Because those arguments are meritorious, these issues are moot. The judgment of the trial court is reversed, and judgment is granted to USF&G.

## Facts

{¶ 4} In January 2001, Sean Griewahn was injured in an automobile accident while he was a passenger in a vehicle owned by his employer, Rural Metro Corporation. At the time of his accident, Sean was acting in the course and scope of his employment. Rural Metro was self-insured for $250,000 and had an excess insurance policy with USF&G covering the time when Sean was injured.

{¶ 5} Sean and his wife, Jennifer, subsequently filed a complaint seeking a declaratory judgment that he was an insured under USF&G's policy with Rural Metro and that the policy provides underinsured motorist coverage. They also sought judgment against USF&G in excess of $250,000 on an underinsured motorist claim.

{¶ 6} USF&G moved for summary judgment in this declaratory action, arguing that the policy was governed by Arizona law and that Arizona law did not require USF&G to offer underinsured motorist coverage on an excess policy. In the alternative, USF&G argued that an excess insurance contract is not an automobile liability or motor vehicle liability policy under Ohio law and, therefore, that it did not need to offer underinsured motorist coverage, that its policy complied with the statute governing underinsured motorist coverage, and that the Griewahns were not entitled to coverage until after they proved their damages exceeded Rural Metro's self-insurance limits. The Griewahns filed a brief opposing the motion for summary judgment, but did not file their own motion for summary judgment.

{¶ 7} On November 21, 2003, the trial court filed a judgment entry denying USF&G's motion for summary judgment. USF&G filed a motion for reconsideration of that judgment. On July 30, 2004, the trial court entered another judgment more fully explaining its reasons for denying the motion for summary judgment. In its July 30 judgment, the trial court found there was no just reason for delay. It is from this judgment that USF&G timely appeals.

## Jurisdiction

{¶ 8} As a preliminary matter, we must explain why we have jurisdiction to hear this appeal. Normally, an order denying summary judgment is not a final, appealable order. *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 186, 743 N.E.2d 901; *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 554 N.E.2d 1292; *Kagy v. Toledo–Lucas Cty. Port Auth.* (1997), 121 Ohio App.3d 239, 242, 699 N.E.2d 566;

*Tribett v. Mestek, Inc.* (Mar. 18, 1999), 7th Dist. No. 99 JE 1, 1999 WL 159216. But in declaratory actions, we treat a denial of summary judgment as a resolution of the action if the trial court sets forth the rights and responsibilities of the parties in its denial of summary judgment. See *Hoop v. Nationwide Mut. Fire Ins. Co.*, 2nd Dist. No. 19686, 2003-Ohio-3772, 2003 WL 21658596, ¶ 2, fn. 1; *Am. Modern Home Ins. Co. v. Hagopian*, 3rd Dist. No. 03–02–23, 2003-Ohio-342, 2003 WL 173710, ¶ 7. In a declaratory action, a resolution setting forth the rights and responsibilities of the parties is a final order. R.C. 2721.02(A).

■ {¶ 9} We join the Third District in cautioning parties that moving for summary judgment in a declaratory action is not a good practice. *Hagopian* at ¶ 7. "The purpose of a declaratory judgment action is to set forth the rights and responsibilities of the parties and does not contain any material issues of fact." Id. But a motion for summary judgment does not necessarily accomplish that goal since a trial court might not set forth the rights and responsibilities of the parties when denying such a motion. See *Haberley v. Nationwide Mut. Fire Ins. Co.* (2001), 142 Ohio App.3d 312, 313–314, 755 N.E.2d 455.

■ {¶ 10} In this case, the trial court set forth the rights and responsibilities of the parties, which was more than it was required to do when denying the motion for summary judgment. It is this extra action which renders its order a final order. Thus, we may consider the merits of USF&G's assignments of error.

## Underinsured–Motorist Coverage

{¶ 11} In its sole assignment of error, USF&G argues:

{¶ 12} "The trial court erred to the prejudice of the Appellant when it overruled USF&G's motion for summary judgment and found first dollar under-insured motorists coverage for Appellee under USF&G's excess insurance contract issued to Rural Metro Corporation."

{¶ 13} USF&G first contends that this insurance policy is not subject to the strictures of R.C. 3937.18 since it is not an "automobile liability or motor vehicle liability policy." It then argues that the policy does not provide coverage, even if it is an "automobile liability or motor vehicle liability policy" since not all conditions precedent to coverage have been met. Of course, it is only necessary to address the merits of USF&G's second argument if we find that their first argument is meritless. "If the policy is not an 'automobile liability or motor vehicle liability policy' then R.C. 3937.18 does not apply, and UM/UIM coverage does not arise by operation of law." *Mazza v. Am. Continental Ins. Co.*, 9th Dist. No. 21192, 2003-Ohio-360, 2003 WL 187580, ¶ 55, citing *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraphs one and two of the syllabus. Because we conclude that the insurance contract is not

an "automobile liability or motor vehicle liability policy," it is not subject to R.C. 3937.18's mandates, and USF&G's second argument is moot.

## Is Policy Governed by R.C. 3937.18?

{¶ 14} In its judgment entry, the trial court applied the statute in effect at the time of the loss to interpret the insurance policy. It then refused to distinguish the policy at issue, an excess insurance policy, from an umbrella insurance policy. USF&G argues that the trial court erred in refusing to make that distinction because it applied the wrong version of the statute to this policy. According to USF&G, the legislature specifically exempted excess insurance policies from the mandates of R.C. 3937.18 in the version in effect at the time the parties entered into the contract. Thus, it contends that that statute does not apply to this insurance contract. In response, the Griewahns cite many Ohio Supreme Court cases that refused to recognize a distinction between excess and umbrella policies for the purposes of R.C. 3937.18.

{¶ 15} The authority supporting the trial court's decision and the arguments of each of the parties leads to different results because that authority relies on different versions of R.C. 3937.18. In order to explain our decision, we must first describe the differences between those versions. Then we must apply the correct version.

{¶ 16} Prior to 1997, R.C. 3937.18 applied to all "automobile liability or motor vehicle liability polic[ies] of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state." Former R.C. 3937.18(A). But the statute never defined what constituted an "automobile liability or motor vehicle liability policy of insurance."

{¶ 17} R.C. 3937.18 was amended by 1997 Am.Sub.H.B. No. 261 and that amendment became effective on September 3, 1997. That amendment provided, among other things, a definition of "automobile liability or motor vehicle liability policy of insurance." It provided:

{¶ 18} "(L) As used in this section, 'automobile liability or motor vehicle liability policy of insurance' means either of the following:

{¶ 19} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;

{¶ 20} "(2) Any umbrella liability policy of insurance." Former R.C. 3937.18(L).

{¶ 21} The statute was next amended by 1999 S.B. No. 57, which became effective on November 2, 1999. The only change this amendment made was to R.C. 3937.18(L)(2). That subsection now read, "Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."

{¶ 22} The statute has been amended since this time, but those amendments were all after Sean's injury.

■ {¶ 23} The Ohio Supreme Court has held that the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties for the purpose of determining the scope of coverage of an underinsured motorist claim. *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. In this case, the parties entered into the contract on May 1, 1998. Thus, the applicable version of the statute is the version amended by 1997 H.B. No. 261, the version which first provided a definition of "automobile liability or motor vehicle liability policy of insurance." The trial court erred when it applied the version of R.C. 3937.18 in effect at the time of the accident. The version it applied defined "automobile liability or motor vehicle liability policy of insurance" differently from the version amended by 1997 H.B. No. 261.

{¶ 24} Because of the statutory history, the cases cited by the Griewahns, *Gyori v. Johnston Coca–Cola Bottling Group* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824; *Duriak v. Globe Am. Cas. Co.* (1986), 28 Ohio St.3d 70, 28 OBR 168, 502 N.E.2d 620; *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310; and *Tyler v. Kelley* (1994), 98 Ohio App.3d 444, 648 N.E.2d 881, are of little assistance in this case. As can be seen by the dates of these decisions, they all interpret a version of the statute that did not define "automobile liability or motor vehicle liability policy of insurance." Thus, their conclusions that there is no difference between excess and umbrella insurance policies for the purposes of R.C. 3937.18 are not helpful. See *Jump v. Nationwide Mut. Ins. Co.* (Nov. 2, 2001), 2nd Dist. No. 18880, 2001 WL 1345954 (The 1997 amendment to R.C. 3937.18 significantly narrows the scope of policies that must include uninsured and underinsured motorist coverage when compared with the Supreme Court's interpretation of the previous version of the statute). As the Ohio Supreme Court said in *Duriak*, the legislature was free to define "automobile liability or motor vehicle liability policy of insurance" any way it liked and different definitions would lead toward different results. Id. at 72, 28 OBR 168, 502 N.E.2d 620.

■ {¶ 25} Under the applicable version of R.C. 3937.18, this insurance policy is only subject to the mandates of that statute if (1) it serves as proof of financial responsibility, as that phrase is defined by R.C. 4509.01(K), or (2) it is an umbrella liability policy of insurance. Former R.C. 3937.18(L). This insurance contract meets neither of these definitions.

{¶ 26} R.C. 4509.01(K) provides:

{¶ 27} " 'Proof of financial responsibility' means proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident."

■ {¶ 28} As the Second District explained, if an insurance policy provides coverage only after a specific amount of damages has been paid to the claimant, then it does not assure an "ability to respond in damages for liability" in the event of an accident. *Wright v. MedAmerica Internatl. Ins., Ltd.*, 2nd Dist. No. 19809, 2003-Ohio-5723, 2003 WL 22429063, ¶ 28. These kinds of excess insurance policies do not serve as proof of financial responsibility. Id.

{¶ 29} This policy is an example of an excess insurance policy described in *Wright*. It provides that USF&G "will pay 'ultimate net loss' in excess of the 'self-insured retention' because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered "auto.' " The policy defines "self-insured retention" as follows:

{¶ 30} " 'Self-insured retention' means the Each Accident Retention amount shown in the Declarations any insured must pay as the sum of:

{¶ 31} "(1) Those sums such insured legally must pay as damages,

{¶ 32} "(2) Those sums such insured is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle' or an 'underinsured motor vehicle',

{¶ 33} "* * * in connection with a covered 'accident' before our obligation to begin payment commences."

{¶ 34} It also defined "ultimate net loss" as follows:

{¶ 35} " 'Ultimate net loss' means:

{¶ 36} "(1) As respects liability coverage other than Uninsured Motorists Coverage, Underinsured Motorists Coverage or personal injury protection or first party benefits, those sums that an insured legally must pay as damages;

{¶ 37} "(2) As respects Uninsured Motorists Coverage, those sums an insured is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle';

{¶ 38} "(3) As respects Underinsured Motorists Coverage, those sums an insured is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle'

{¶ 39} "* * * in connection with a covered 'accident' whether by reason of adjudication or settlement."

{¶ 40} The declarations page indicates that the "self-insured retention" in this policy is $250,000 for each accident. Thus, this policy does not provide proof of ability to respond in damages for liability in the amounts listed in R.C. 4509.01(K) and is not proof of financial responsibility.

{¶ 41} Because this policy does not serve as proof of financial responsibility, it is not an "automobile liability or motor vehicle liability policy of insurance" as that term is described in former R.C. 3937.18(L)(1).[1]

{¶ 42} This policy is also not an umbrella insurance policy. The Eighth District has given a thorough explanation of the differences between excess and umbrella insurance policies.

{¶ 43} "Although the terms 'excess insurance' and 'umbrella policy' have been used interchangeably by some courts, they are distinct terms of art within the insurance business. In Richmond, Rights and Responsibilities of Excess Insurers (2000), 78 Denv.U.L.Rev. 29, 29–31, the differences between excess insurance and umbrella coverage were explained:

{¶ 44} " 'An excess policy provides specific coverage above an underlying limit of primary insurance. Excess insurance is priced on the assumption that primary coverage exists; indeed, an excess policy usually requires by its terms that the insured maintain in force scheduled limits of primary insurance. In keeping with the reasonable expectations of the parties, including the insured, which paid separate premiums for its primary and excess policies, excess coverage generally is not triggered until the underlying primary limits are exhausted by way of judgments or settlements. Because an excess insurer's duties to its insured are not triggered until the limits of the underlying primary policy (or policies) are exhausted within the meaning of the excess policy, courts sometimes refer to

---

1. It is worth noting that USF&G filed a copy of a commercial liability policy it issued to Rural Metro covering the time of the accident, which would serve as proof of financial responsibility.

excess insurance as "secondary insurance," or as "supplemental" or "supplementary insurance." Additionally, the first layer of coverage above an SIR is sometimes described as "excess insurance."

{¶ 45} " 'A true excess policy does not broaden the underlying coverage. While an excess policy increases the amount of coverage available to compensate for a loss, it does not increase the scope of coverage. An excess policy may be written on a "stand alone" basis or as a policy that "follows form." A stand-alone excess policy relies exclusively on its own insuring agreement, conditions, definitions, and exclusions to grant and limit coverage. A following form excess policy incorporates by reference the terms, conditions, and exclusions of the underlying policy. An excess policy that follows form is designed to match the coverage provided by the underlying policy, although some following form policies contain exclusions beyond those found in the primary policy, and policy provisions sometimes conflict. To the extent the language of a primary policy and a following form excess policy differ, the terms of the excess policy control where the excess coverage is implicated. Of course, an insured that purchases two or more concurrent excess policies to insure against large risks may layer both stand alone and following form policies.

{¶ 46} " 'An umbrella policy is like an excess policy in that it is written in addition to a primary policy to protect the insured against liability for catastrophic losses that would exceed the limits of affordable primary coverage. Like many excess policies, umbrella policies are written to stand alone. An umbrella policy differs from an excess policy in a critical aspect: an umbrella policy typically insures against certain risks that a concurrent primary policy does not cover. An umbrella policy is thus a "gap filler"; by design, it provides first dollar liability coverage where a primary policy and an excess policy do not. For example, an umbrella policy may insure against "personal injury" when a primary policy only insures against "bodily injury" and "property damage." By essentially dropping down to provide primary coverage or by filling a gap in primary coverage, an umbrella policy broadens the insured's primary coverage where an excess policy does not. The terms "excess policy" and "umbrella policy" are not synonymous.' (Footnotes omitted.)" *Tscherne v. Nationwide Mut. Ins. Co.*, 8th Dist. No. 81620, 2003-Ohio-6158, 2003 WL 22724630, ¶ 21–24, quoting Richmond, Rights and Responsibilities of Excess Insurers (2000), 78 Denv.U.L.Rev. 29, 29–31.

{¶ 47} The policy in this case does not fill the gaps in the manner describe by *Tscherne*. Thus, it is neither an umbrella policy nor an "automobile liability or motor vehicle liability policy of insurance" as that term is described in former R.C. 3937.18(L)(2).

{¶ 48} The USF&G policy with Rural Metro at issue in this case does not fit the statutory definition of "automobile liability or motor vehicle liability policy of

insurance" contained in former R.C. 3937.18(L). Thus, the statutory mandates do not apply to this insurance contract. The trial court erred when it found to the contrary. USF&G's assignment of error is meritorious.

{¶ 49} Because we conclude that the trial court erred because the insurance policy is not an "automobile liability or motor vehicle liability policy of insurance," we do not need to address USF&G's secondary argument. This policy is neither an umbrella insurance policy nor a policy that serves as proof of financial responsibility. Thus, it is not subject to the mandates of R.C. 3937.18. The trial court came to an incorrect conclusion because it applied the wrong version of the statute.

{¶ 50} Accordingly, the judgment of the trial court is reversed and judgment is granted to USF&G. It was not obligated to offer underinsured motorist coverage and its duties under its excess policy with Rural Metro are only those duties specifically set forth in the contract.

Judgment reversed.

GENE DONOFRIO, P.J., and VUKOVICH, J., concur.