OPINION
{¶ 1} Plaintiffs-appellants, Michael Marron and Kathleen Hutchinson (collectively, "Marron"), appeal a decision of the Butler County Court of Common Pleas granting summary judgment to USAA Casualty Insurance Company ("USAA"). We affirm the decision of the trial court.
 {¶ 2} On October 10, 2003, Marron was injured when an uninsured motorist negligently struck him while he was riding his bicycle. USAA paid Marron $300,000 in UM/UIM coverage under his automobile insurance policy. Marron also carried a personal umbrella policy of insurance with USAA. The initial umbrella policy commenced on October 11, 1994 and was renewed annually thereafter. The policy offered $2,000,000 in uninsured/underinsured motorists ("UM/UIM") coverage. Marron waived this UM/UIM coverage in writing on October 16, and his rejection was received by USAA on October 20, 1994. Following the accident, USAA denied Marron's demand for UM/UIM coverage under his personal umbrella policy.
 {¶ 3} In July 2004, Marron instituted a declaratory judgment action seeking UM/UIM coverage under the umbrella policy. Marron and USAA stipulated to the facts as set forth above. The parties filed cross motions for summary judgment. In July 2005, the trial court granted USAA's motion and overruled Marron's motion. Marron timely appealed.
 {¶ 4} In a single assignment of error, Marron challenges the trial court's awarding of summary judgment to USAA and its denial of his motion. Marron insists that there are material issues of fact regarding his entitlement to UM/UIM coverage, raising two arguments. First, Marron argues that the ambiguous policy renewal form automatically provides for such coverage unless the insured takes certain affirmative steps to the contrary, which he did not take. Second, Marron insists that his initial rejection of UM/UIM coverage was ineffective, resulting in coverage as a matter of law.
 {¶ 5} We review a trial court's decision on a summary judgment motion de novo. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296. Summary judgment is proper where (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. Civ.R. 56(C). See, also, Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 6} First we address Marron's argument that he is entitled to coverage as a matter of contract interpretation. Aside from his rejection of UM/UIM coverage at the inception of the policy in 1994, Marron never sought to lower the limit or to reject the coverage in writing in subsequent renewals. Nonetheless, the trial court held that Marron's "express, knowing rejection of [UM/UIM] coverage in 1994 * * * carried over into each annual renewal of the policy, including the one in effect October 10, 2003" (the date of the accident).
 {¶ 7} Marron argues that the policy failed to specify whether his rejection of UM/UIM coverage at the policy's execution was incorporated into subsequent renewals, or whether he was required to newly reject coverage upon renewal. Such ambiguity, according to Marron, results in coverage under the insurance contract.
 {¶ 8} USAA asserts that the policy language was not ambiguous. The insurer insists that Marron was aware he would not receive UM/UIM coverage when he signed the rejection form upon acquiring the umbrella policy. USAA also notes that Marron never attempted to alter the coverages provided under his umbrella policy following this rejection, and that he was never charged a premium for UM/UIM coverage.
 {¶ 9} The intent of the parties is paramount in guiding judicial construction of contracts. Hamilton Ins. Serv., Inc. v.Nationwide Ins. Cos., 86 Ohio St.3d 270, 273, 1999-Ohio-162. The issue of contractual ambiguity is a question of law for the court. Westfield Ins. Co. v. HULS Am., Inc. (1998),128 Ohio App.3d 270, 291. Where a contract is clear and unambiguous, a court must enforce the agreement by attributing the plain and ordinary meaning to its language as written. Towne v.Progressive Ins. Co., Butler App. No. CA2005-02-031,2005-Ohio-7030, ¶ 8. Any ambiguities are to be construed strictly against the insurer and liberally in favor of the insured. Id. Ambiguity exists where contract language is susceptible to two or more reasonable interpretations. Id. at ¶ 9.
 {¶ 10} The UM/UIM form at issue was included with Marron's umbrella policy from its initial implementation in October 1994 through the October 2002-2003 renewal.[1] The first page of the 1994 form states:
 {¶ 11} "Umbrella policies issued or renewed in Ohio automatically include Uninsured/Underinsured Motorists Coverage (UM/UIM) as a combined coverage. UM/UIM is included in limits equal to your Umbrella Policy unless you (1) select a lower UM/UIM limit, or (2) reject the coverage entirely in writing. We are required by your state law to notify you of the available options."
 {¶ 12} The form then requests that the insured "PLEASECOMPLETE THE REJECTION/ORDER FORM ON THE REVERSE AND RETURN ITWITHIN THE NEXT TEN DAYS." (Emphasis sic.) The reverse page prompts the insured to choose from among three options:
{¶ 13} "I reject UM/UIM coverage on my Umbrella Policy — sign Rejection Form below.
 {¶ 14} "I request UM/UIM coverage equal to my Umbrella Policy limit.
 {¶ 15} "I request UM/UIM coverage lower than my Umbrella Policy limit. * * *" (Emphasis sic.) Below this list is a signature line for those who wish to elect coverage. The form thereafter publicizes, "You can reject this UM/UIM coverage and avoid these additional charges by completing and returning the rejection form below." Immediately below is the "UMBRELLA UM/UIMREJECTION FORM," enumerating a rejection of coverage and accompanied by its own signature line. (Emphasis sic.)
 {¶ 16} Upon examination, we conclude that the language of the UM/UIM form itself is clear and unambiguous. The terms of the form are not reasonably susceptible to more than one interpretation. See Towne, 2005-Ohio-7030 at ¶ 9. Marron signed and dated the signature line on the conspicuously titled "UMBRELLA UM/UIM REJECTION FORM." In so doing, Marron evidenced his intent to waive UM/UIM coverage. See Hamilton Ins.,86 Ohio St.3d at 273. "Courts may not stretch or restrict unambiguous policy provisions to reach a result clearly not sought by the parties." Towne at ¶ 10, quoting Marasco v. Hopewell,
Franklin App. No. 03AP-1081, 2004-Ohio-6715, ¶ 34. Where Marron clearly rejected UM/UIM coverage, we will not stretch the terms of the policy to nullify his waiver. The issue then becomes whether or not this waiver was incorporated into subsequent renewals of the policy.
 {¶ 17} The 1994 UM/UIM form contains language at the bottom of the reverse page directing the insured to return the form with the application if it is accompanying a new policy. If it is a renewal policy, the form explicitly instructs the insured to return the form only if the insured has not previously signed a waiver or if he or she desires a change in UM/UIM coverage. Marron cannot sign the form and thereafter claim ignorance of these provisions. Cf. Countrymark Cooperative, Inc. v. Smith
(1997), 124 Ohio App.3d 159, 169. Implicit in these terms is the notion that coverage elections or rejections are carried overunless affirmative steps are taken by the insured to designate otherwise. Pursuant to the plain and ordinary meaning of the terms, in the absence of affirmative conduct, coverage defaults to the insured's previous election or rejection of UM/UIM coverage.
 {¶ 18} Subsequent revisions to the form are even more precise about a prior election or rejection being incorporated into later renewals. The October 1998-1999 form states, "If this is a renewal policy, return this form within ten (10) days only if you desire a change. Otherwise, your previous election or rejectionto the renewal policy is in effect."[2] (Emphasis added.) Clearly, as of the policy in effect at the time of Marron's accident, coverage options were meant to carry over. We thus conclude that there are no issues of fact as to Marron's ineligibility for UM/UIM coverage as a matter of contract.
 {¶ 19} Next we address Marron's argument that he is entitled to UM/UIM coverage as a matter of law. Because his initial rejection was received after the policy's commencement date, Marron claims that it was ineffective and that coverage was automatically instated pursuant to Gyori v. Johnston Coca-ColaBottling Group, Inc., 76 Ohio St.3d 565, 1996-Ohio-358; andLinko v. Indemnity Co. of North America, 90 Ohio St.3d 445,2000-Ohio-92. Marron maintains that amendments to R.C. 3937.18, which relieve insurers of the obligation to offer UM/UIM coverage, cannot cure his initial ineffective waiver of coverage.
 {¶ 20} USAA counters by emphasizing that Marron's arguments rely on obsolete caselaw that has been superseded by statute. Observing that the amended statute controlled the 2002-2003 renewal, USAA insists that the Linko/Gyori requirements for a valid offer and rejection of UM/UIM coverage are irrelevant. SeeArn v. McLean, 159 Ohio App.3d 662, 2005-Ohio-654, ¶ 41.
 {¶ 21} R.C. 3937.18 governs UM/UIM coverage. Construing a former version of the statute in Linko, the Ohio Supreme Court clarified a "meaningful offer" of UM/UIM coverage as one which included a brief description of the coverage and its premiums and limits. Linko at 449. In Gyori, the court had previously described an "express and knowing rejection" of UM/UIM coverage as a written rejection that is received by the insurer prior to the commencement date of the policy. Gyori at paragraph two of the syllabus. The October 31, 2001 amendments to the statute entirely eliminated the requirement that UM/UIM coverage be offered with insurance policies. In passing the amendments, the General Assembly expressed its intent to supersede the holdings in Gyori, Linko, and their progeny. See Section 3(E), Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779, 788-90 ("S.B. 97").
 {¶ 22} Concerning insurance policies executed before the S.B. 97 amendments, the issue remains whether a waiver of UM/UIM coverage received after the beginning of a policy term renders the rejection ineffective and warrants imposition of coverage as a matter of law. See Gyori, 76 Ohio St.3d 565. Several Ohio courts have analyzed this issue and resolved that, in such situations, the rejection was ineffective as to the already-commenced policy period, but became effective when the next policy term began. See, e.g., Shindollar v. Erie Ins. Co.,148 Ohio App.3d 537, 2002-Ohio-2971, ¶ 11, quoting Raymond v.Sentry Ins., Lucas App. No. L-01-1357, 2002-Ohio-1228, 2002 WL 360736 at *3; Lafferty v. Reliance Ins. Co. (S.D.Ohio 2000),109 F.Supp.2d 837, 843; Hillyer v. State Farm Mut. Auto. Ins.Co. (1999), 131 Ohio App.3d 172, 179; Hammer v. Lumbermens Mut.Cas. Co. (Aug. 20, 1999), Lucas App. No. L-98-283, 1999 WL 628684 at *9; Hillyer v. State Farm Ins. Co. (Dec. 18, 1998), Lake App. No. 97-L-031, 1998 WL 1093918 at *3-4. Cf. Roberts v.Universal Underwriters Ins. Co. (C.A.6 2003), 334 F.3d 505, 512
fn. 5.
 {¶ 23} We agree with the reasoning of these cases. Such a result aptly approximates the intent of the parties upon entering into the umbrella policy agreement in the present matter. As stated, Marron manifested his intent to waive UM/UIM coverage upon signing the rejection form. Although Marron's October 16, 1994 rejection was ineffective as to the 1994-1995 term, it became effective at the commencement of the 1995-1996 term.[3] Upon proper rejection at this renewal term, Marron was no longer eligible for UM/UIM coverage unless he initiated changes to his policy requesting otherwise. Cf. Hammer at *7.
 {¶ 24} Furthermore, when Marron's policy was renewed on October 11, 2002, R.C. 3937.18 no longer mandated that USAA offer and obtain a written rejection of UM/UIM coverage. See R.C.3937.18(A). As such, Marron was no longer entitled to UM/UIM coverage as a matter of law at the time of the accident. Burtonv. Allstate Ins. Co., Butler App. No. CA2004-10-247,2005-Ohio-5291, at ¶ 12-13 (holding that the statutory law in effect at the time an insurance policy is issued or renewed defines the scope of UM/UIM coverage in the policy). Accord Rossv. Farmers Ins. Group, 82 Ohio St.3d 281, 287, 1998-Ohio-381.
 {¶ 25} Regardless of whether USAA was statutorily required to offer UM/UIM coverage as of the 2002-2003 renewal policy under R.C. 3937.18, Marron emphasizes the fact that the language of the renewal offered such coverage. Marron infers that the presence of the UM/UIM language in renewal forms results in a duty on the part of USAA to offer and obtain a rejection of the coverage.
 {¶ 26} As stated, the UM/UIM form indicated that renewals would incorporate a previous election or rejection of coverage unless the insured returned a new UM/UIM form designating otherwise. The fact that renewal forms included the UM/UIM offer language does not convert such an offer into a duty. According to the plain meaning of the terms, the language was clearly included on the standardized form to direct those who were filling out the application for the first time or those who sought to alter coverage after a previous election or rejection. We conclude that the presence of such language does not create an issue of fact as to Marron's ineligibility for UM/UIM coverage.
 {¶ 27} Because Marron has failed to satisfy his reciprocal evidentiary burden after USAA established that there were no genuine issues for trial, his sole assignment of error is overruled.
 {¶ 28} Judgment affirmed.
Powell, P.J., and Bressler, J., concur.
[1] The UM/UIM form was revised over the years. These revisions, however, were negligible and do not significantly impact our analysis.
[2] The record does not contain copies of each of Marron's annual renewals following the implementation of the policy in 1994, so we cannot determine exactly when these changes were effectuated. The evidence confirms that this modification was incorporated as early as the 1998-1999 renewal term.
[3] The trial court's holding validated Marron's rejection of UM/UIM coverage for the 1994-1995 policy term. However, whether coverage was in effect for that period is irrelevant to the resolution of the legal issues in this case. Our conclusion that the waiver effectively annulled coverage from the 1995-1996 policy year forward thus remains unaffected.