{¶ 1} Appellants Thomas C. Pavlik and the law firm of Novak, Robenalt, Pavlik Scharf L.L.P. (hereinafter collectively referred to as appellants)[1] appeal the denial of their motion for summary judgment and granting of summary judgment in favor of plaintiff-appellee Dezso J. Ladanyi. Appellants assign the following two errors for our review:
 "I. The trial court erred in denying defendants' motion for summary judgment as plaintiff's claim for legal malpractice is barred by the applicable one year statute of limitations."
 "II. The trial court erred in granting plaintiff's motion for summary judgment and entering judgment against defendants' because, at a minimum, a question of fact remains as to whether plaintiff's claim for legal malpractice is barred by the applicable statute of limitations."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's granting of summary judgment in Ladanyi's favor. The apposite facts follow.
 {¶ 3} Dezso J. Ladanyi invested in a number of business ventures started by his children, which for the most part ended up as failed businesses. The Ladanyi family retained the appellants to represent them in various collection matters arising out of the children's failed businesses. The malpractice that is the subject of the instant case arose out of the cookie manufacturing business by the name of Crookes and Hanson Ltd., which was started by Ladanyi's daughter and son-in-law. The company's computer network supplier, DeCarlo, Paternite Associates ("DeCarlo"), filed a collection suit against Crookes Hanson Ltd., and against Ladanyi and his son-in-law personally. Appellants answered the complaint on behalf of all the defendants without informing Ladanyi that a suit had been filed against him personally and without Ladanyi retaining them to represent him personally. Ladanyi was never served with the complaint.
 {¶ 4} The appellants failed to respond to discovery requests by DeCarlo. As a result, DeCarlo filed a motion for summary judgment, which was granted on June 27, 2002. The appellants filed an opposition to the motion for summary judgment two weeks later, unaware that summary judgment had already been granted. This was in spite of the fact the court sent postcard notice to the appellants advising them of the ruling.
 {¶ 5} On July 19, 2002, Ladanyi and his son-in-law met with the appellants. The appellants contend they were unaware of the judgment at the time of this meeting. Ladanyi advised them that because Crookes Hanson Ltd. was an insolvent company, it did not make sense to continue to pay legal fees to defend the collection suits. Appellants contend that Ladanyi told them he could no longer afford to pay the appellants and was seeking other counsel. Both agree, however, that at that time, appellants returned all the files on the various collection suits against Crookes Hanson Ltd. Ladanyi, however, contends, that he was never informed that the DeCarlo suit sought to hold him personally liable for the debt. A letter from the appellants accompanied the files. The letter was addressed to eight other individuals and entities and listed the files returned. It referred to the suit in the instant case as the "DeCarlo and Paternite Lawsuit." There was no reference to Ladanyi's name.
 {¶ 6} In November of 2003, Ladanyi attempted to refinance the mortgage on one of his properties. At that time, he was informed that as a result of the Decarlo case, a personal judgment had been entered against him in the amount of $44,805.19. Because Ladanyi had never been served with the DeCarlo complaint, he was completely unaware that the suit was also against him personally.
 {¶ 7} Ladanyi consulted with the appellants about the judgment in November and December of 2003. According to Ladanyi, at these meetings legal strategies were discussed regarding the judgment. On December 12, 2003, appellants wrote a letter to Ladanyi stating that because he had consulted another attorney on the matter, they would not represent him.
 {¶ 8} On October 26, 2004, Ladanyi filed a complaint against the appellants for legal malpractice. The appellants answered and filed a cross-complaint for attorney fees. Cross motions for summary judgment were filed. The trial court granted summary judgment in favor of Ladanyi and denied the appellants' motion for summary judgment.
 Standard of Review {¶ 9} We will address the appellants' two assigned errors together because they both relate to whether an issue of fact exists regarding the statute of limitations.
 {¶ 10} We review an appeal from summary judgment under a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[3] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[4]
 {¶ 11} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[5] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[6]
 Legal Malpractice {¶ 12} The parties do not dispute the fact that legal malpractice occurred. At issue is whether the statute of limitations has run. R.C.2305.11 sets forth a one year statute of limitations for legal malpractice claims. The one year statutory period begins to run upon the termination of the attorney-client relationship or the "discovery" of the alleged malpractice, whichever occurs later. In Zimmie v. Calfee,Halter Griswold[7] the Ohio Supreme Court set forth the law with respect to the statute of limitations for malpractice:
 "Under R.C. § 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue its possible remedies against the attorney, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."[8]
 {¶ 13} Case law applying Zimmie has defined a cognizable event as "an event that is sufficient to alert a reasonable person that his attorney has committed an improper act in course of legal representation."[9]
 {¶ 14} We agree with the appellants that the attorney-client relationship between the parties terminated on July 19, 2002, when the appellants returned all the case files to the Ladanyi family. However, we disagree as to when the cognizable event occurred.
 {¶ 15} The appellants contend the cognizable event occurred in January 2003 when Ladanyi hired new counsel. They argue Ladanyi's new counsel should have notified him that summary judgment had been entered against him personally in the DeCarlo suit. However, the record indicates that Ladanyi retained new counsel regarding litigation unrelated to the DeCarlo case. Therefore, there would have been no reason for new counsel to have searched the docket regarding that case.
 {¶ 16} Appellants also argue that the return of the files put Ladanyi on notice regarding the judgment because the docket provides constructive notice of the judgment. However, we find it incongruous for appellants to argue Ladanyi had notice, when they claim they themselves did not have notice of the judgment. Moreover, the case law cited by appellants are cases in which the client was aware of the litigation.[10] Ladanyi was never informed a complaint had been personally brought against him; therefore, he had no reason to check the docket regarding the pending suit brought against him personally.
 {¶ 17} We conclude the cognizable event occurred in November of 2003, when, while attempting to obtain refinancing, Ladanyi was informed a personal judgment was entered against him. It was then, for the first time, that he discovered that DeCarlo had sued him personally and had obtained a personal judgment against him. Therefore, his complaint filed on October 26, 2004, was filed within the statute of limitations. Accordingly, appellants' first and second assigned errors are overruled.
Judgment affirmed.
It is, therefore, considered that said appellee recover of said appellants his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and MARY EILEEN KILBANE, J., CONCUR .
[1] Crookes Hanson was voluntarily dismissed from the case.
[2] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[3] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[4] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[6] Id. at 293.
[7] (1984), 43 Ohio St.3d 54.
[8] Id. at syllabus.
[9] Spencer v. McGill (1993), 87 Ohio App.3d 267,278; Hickle v.Malone (1996), 110 Ohio App.3d 703, 707.
[10] Koerber v. Levey Gruhin, 9th Dist. No. 21720, 2004-Ohio-3055;Heiland v. Marfori (Mar. 20, 1985), 9th Dist. No. 3227; Cuyahoga DunhamSupply Co. v. Kus-Tom Builders, Inc. (Apr. 12, 1979), Cuyahoga App. No. 38608.