JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant United States Fidelity Guaranty Company appeals the trial court's denial of its partial motion for summary judgment and also the trial court's grant of plaintiff-appellee/cross-appellant Michael J. Gilchrist's ("Gilchrist") partial motion for summary judgment. Gilchrist cross-appeals one assignment of error, that the trial court erred in granting United States Fidelity *Page 3 
Guaranty Company's motion for leave to file a second motion for summary judgment.
 {¶ 2} This case arises out of a motor vehicle accident in which Gilchrist sustained severe personal injuries while in the course of his employment with United Rentals, Inc. ("United Rentals"). On August, 19, 2000, Gilchrist worked as foreman on a road construction project on I-90, westbound, just east of West 140th Street in Cleveland, Ohio. Gilchrist was not operating a motor vehicle at the time, but was working as a pedestrian within the designated construction site.
 {¶ 3} On said date, defendant Arthur M. Gonsor ("Gonsor"), while under the influence of alcohol, lost control of his vehicle while driving on I-90 westbound. Gonsor drove his vehicle into the designated construction site and struck Gilchrist. Gilchrist suffered injuries including: head, neck and back injuries; fractured tibias, fibias, ribs, jaw and hip; and severe brain damage.
 {¶ 4} Gonsor was subsequently convicted of aggravated vehicular assault. Gonsor's insurer offered Gilchrist its policy limits of $12,500.
 {¶ 5} United States Fidelity Guaranty Company and St. Paul Fire and Marine Insurance Company insured United Rentals with three separate insurance policies. Pursuant to the trial court's ruling, journalized on February 7, 2002, we will treat United States Fidelity Guaranty Company and St. Paul as the same entity, hereinafter referred to as "USF G." *Page 4 
 {¶ 6} The first commercial policy, number DRE2256201 ("commercial auto policy") is a primary business auto coverage policy and provides liability coverage of up to one million dollars. The second policy, number DRE2256204 is a commercial general liability policy. The third policy, number DRE2256200 ("commercial excess policy"), provides excess coverage in the amount of two million dollars.
 {¶ 7} On October 4, 2000, Gilchrist filed the instant action against Gonsor. On March 2, 2001, Gilchrist amended his complaint to add new party defendants USF G.
 {¶ 8} On August 10, 2001, both Gilchrist and USF G filed motions for summary judgment. On February 7, 2002, the trial court granted Gilchrist's motion for summary judgment and granted in part and denied in part USF G's motion for summary judgment.
 {¶ 9} The trial court found, as to the first policy for commercial auto coverage, that United Rentals is not a self-insured; that uninsured/underinsured coverage is available as a matter of law; that Gilchrist is covered as an insured under the policy; and that coverage exists up to one million dollars.
 {¶ 10} Next, as to the second policy for commercial general liability coverage, the trial court found that Gilchrist asserted no claims against said policy and granted USF G's motion for summary judgment as to the commercial general liability policy. *Page 5 
 {¶ 11} Regarding the third policy for excess liability coverage, the trial court declined to rule, stating, "[a]s this court does not have before it the full extent of the Plaintiff's medical bills which resulted from the August 19, 2000 accident, this court is unable to determine whether or not the excess coverage policy should be put into effect." Lastly, the trial court noted "[t]he issues of proximate cause and damage[s] remain for the factfinder."
 {¶ 12} On March 5, 2002, USF G appealed the ruling of the trial court. The Eighth District Court of Appeals affirmed. Gilchrist v.Gonsor, Cuyahoga App. No. 80944; 2003-Ohio-2297. USF G appealed to the Ohio Supreme Court, which again, affirmed. Gilchrist v. Gonsor,104 Ohio St.3d 599, 2004-Ohio-7103 ("Gilchrist I").
 {¶ 13} Upon remand to the trial court, USF G filed a motion for leave to file a second motion for summary judgment, which was granted August 17, 2005. Thereafter, the parties filed, for the second time, motions for summary judgment regarding coverage issues.
 {¶ 14} The trial court denied USF G's motion for summary judgment and granted Gilchrist's motion for summary judgment. The trial court made the following findings regarding both policies: there lacked a valid offer for uninsured/underinsured motorist coverage; uninsured/underinsured motorist coverage exists as a matter of law; Gilchrist is an insured. *Page 6 
 {¶ 15} USF G timely appealed, asserting the following two assignments of error:
 "The trial court committed reversible error by denying United States Fidelity Guaranty Company's motion for summary judgment of Michael Gilchrist's declaratory judgment claim.
 The trial court committed reversible error by granting Michael Gilchrist's motion for summary judgment on his declaratory judgment claim."
 {¶ 16} The standard of review for a motion for summary judgment is de novo, therefore:
 "[W]e afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issues as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party." Ladanyi v. Crookes Hanson, Ltd, Cuyahoga App. No. 87888, 2007-Ohio-540. (Internal citations omitted.)
I. Extrinsic Evidence {¶ 17} USF G argues that intervening case law that acts as an exception to the law of the case doctrine, namely, Hollon v. Clary; TwinCity Fire Ins. Co., 104 Ohio St.3d 526, 2004-Ohio-6772, must be applied to the instant case. Gilchrist disagrees and argues that pursuant to the doctrine of res judicata, coverage issues that have already been addressed may not be litigated a second time.
 {¶ 18} "The issue of whether res judicata, as well as the law of the case doctrine, applies in a particular situation is a question of law that is reviewed under a *Page 7 
de novo standard." Nationwide Ins. Co. v. The Davey Tree ExpertCo., 166 Ohio App.3d 268, 2006-Ohio-2018. The Ohio Supreme Court has addressed the law of the case doctrine and held:
 "[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and the reviewing levels.
 The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.
 In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." Nolan v. Nolan (1948), 11 Ohio St.3d 1. (Internal citations omitted.)
 {¶ 19} The Nolan court set forth one exception to the law of the case doctrine:
 "[A]bsent extraordinary circumstances, such as an intervening decision by this court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." Id.
 {¶ 20} The doctrine of res judicata requires that:
 "An existing final judgment of decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit. The doctrine of res judicata requires a party to raise every ground for relief in a first action, or to be forever barred from asserting it. A valid, final judgment rendered on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the prior action." Mahin v. *Page 8 State Farm Mut. Auto Ins. Co. (1998), 129 Ohio App.3d 688. (Internal citations omitted.)
 {¶ 21} The doctrine of res judicata does not apply to the case sub judice. See Nationwide, supra; Wright v. Cincinnati Ins. Co.,159 Ohio App.3d 154, 2004-Ohio-5932. Here, we are confronted with GilchristI, in which the trial court entered declaratory judgment as to USF G's commercial auto policy and indicated "no just cause for delay" pursuant to Civ.R. 54(B). In doing so, the trial court's declaratory judgment became a final appealable order as to coverage, although final judgment has not yet been entered by the trial court as required for proper application of the doctrine of res judicata.
 {¶ 22} "Res judicata is a substantive rule of law that applies to final judgment, whereas the law-of-the-case doctrine is a rule of practice analogous to estoppel." Hopkins v. Dyer, 104 Ohio St.3d 461,2004-Ohio-6769. In the instant action, there was no final judgment on the merits regarding insurance coverage and thus, res judicata does not apply.
 {¶ 23} However, the law-of-the-case doctrine is applicable to the instant case. Gilchrist I constituted an interlocutory appeal in which the Eighth District Court of Appeals addressed whether fronting policies are subject to mandates set forth in R.C. 3937.18, whether uninsured/underinsured motorist coverage exists under the commercial auto policy, and whether Gilchrist is an insured under the commercial auto policy. Gilchrist v. Gonsor, Cuyahoga App. No. 80944; 2003-Ohio-2297. The *Page 9 
Ohio Supreme Court thereafter addressed the sole issue of whether "insurance policies with a deductible that matches the limit of liability, known as fronting policies, are subject to the provisions of former R.C. 3937.18." Gilchrist I, supra. Thus, in applying the law-of-the-case doctrine to the instant case, we may not disregard the mandate of a superior court in a prior appeal in the same case, namely,Gilchrist I, unless there exists an intervening decision by a superior court for our consideration.
 {¶ 24} USF G concedes in its brief that the Ohio Supreme Court inGilchrist I, established that uninsured/underinsured motorist coverage arises by operation of law pursuant to former R.C. 3937.18. However, USF G now argues that Hollon, supra, is an intervening decision of a superior court that we are required to follow in the instant case. Specifically, USF G argues that pursuant to Hollon, issued on December 17, 2004, it is now entitled to offer extrinsic evidence that it made a valid offer of uninsured/underinsured motorist coverage as to both the commercial auto policy and commercial excess policy. We disagree.
 {¶ 25} USF G seeks to incorporate into evidence the affidavit of Grace M. Crickette ("Crickette"), the former vice president of Risk Services for United Rentals, dated August 31, 2005, in support of its contention that it made a valid offer of uninsured/underinsured motorist coverage to United Rentals. The Hollon court held:
 "[A] signed, written rejection of uninsured/underinsured motorist coverage is valid under the H.B. 261 version of R.C. 3937.18 if it was made in response to an offer that included a brief description of the coverage and the coverage premiums and limits. Once a signed *Page 10 
rejection is produced, the elements of the offer may be demonstrated by extrinsic evidence." Hollon, supra.
 {¶ 26} In support of its contention, USF G cites to Wears v.Motorists Mut. Ins. Co., 9th Dist. No. 22027,2005-Ohio-341, which held that the trial court erred by failing to applyHollon to a pending case.
 {¶ 27} However, the Hollon court made it clear that its holding applies to the 1997 H.B. 261 version of R.C. 3937.18 only; notably theWears court applied the same. "[T]he scope of coverage of an automobile liability insurance policy is defined by the statutory law in effect at the time of contracting." Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281; Anderson v. Nationwide Mut. Fire Ins. Co., 6th Dist. No. L-04-1251, 2005-Ohio-3043. Thus, we are bound to apply R.C. 3937.18 as amended by 1999 S.B. 57, effective November 2, 1999. Said version correlates with the date USF G and United Rentals entered into their contract for commercial excess coverage. In doing so, we find there exists no court precedent applyingHollon to pending cases in which R.C. 3937.18 as amended by 1999 S.B. 57 applies.
 {¶ 28} We find that the Hollon and Wears cases have no bearing in the case sub judice to either the commercial auto policy or the commercial excess policy. We find that extrinsic evidence, including the affidavit of Crickette, is not admissible to demonstrate that USF G made a valid offer of uninsured/underinsured motorist coverage under either policy. *Page 11 
II. R.C. 3937.18 and the Commercial Excess Policy {¶ 29} USF G next asserts that the commercial excess policy does not provide uninsured/underinsured motorist coverage pursuant to R.C.3937.18. We disagree.
 {¶ 30} In support of this contention, USF G cites to Norbert v.Westfield, Cuyahoga App. No. 83059, 2004-Ohio-4623 and Bertram v. WestAm. Ins. Co., Cuyahoga App. No. 81313, 2002-Ohio-6513. In each of these cases, the Eighth District Court of Appeals found that similar policies to that of the commercial excess policy at issue failed to satisfy R.C.3937.18(L)(1), as amended by 1997 H.B. 261, because the policies did not specifically identify the insured motor vehicles. As this portion of R.C. 3937.18(L)(1) remains unchanged in the 1999 S.B. 57 version, we agree. Said statute states:
 "(L) As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
 (1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 (2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 31} The commercial excess policy in the case sub judice does not satisfy R.C. 3937.18(L)(1) because the policy does not serve as proof of financial responsibility pursuant to R.C. 4509.01(K), which states:
 "`Proof of financial responsibility' means proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, *Page 12 
maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident."
 {¶ 32} Where an insurance policy provides coverage only after payment of a specific amount of damages has already been provided to the claimant, then the policy does not, in the event of an accident, have the "ability to respond in damages for liability" pursuant to R.C.3937.18(L)(1). See Wright v. MedAmerica Internatl. Ins., Ltd., 2nd Dist. No. 19809, 2003-Ohio-5723. Here, the commercial excess policy at issue provides coverage only after payment of the commercial auto policy or the commercial general liability policy and, thus, it does not have the ability to respond in damages for liability pursuant to R.C. 3937.18(L)(1).
 {¶ 33} The commercial excess policy does satisfy R.C. 3937.18(L)(2), however, because it is "written as excess over one or more policies described in division (L)(1) of this section." We note that "[although the terms `excess insurance' and `umbrella policy' have been used interchangeably by some courts, they are distinct terms of art within the insurance business." Griewahn v. United States Fid. Guar.Co., 160 Ohio App.3d 311, 2005-Ohio-1660.
 "Ohio law distinguishes between `umbrella' policies and `excess' liability policies. Umbrella policies are different from standard excess insurance policies in that they are meant to fill gaps in coverage both vertically, by providing excess coverage, and horizontally (by providing primary coverage). The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas *Page 13 
situations where the underlying insurance provides no coverage at all. Other Ohio courts also have recognized that umbrella policies provide both vertical coverage when an underlying policy has been exhausted and horizontal coverage to fill gaps in the coverage provided by an underlying policy, whereas excess policies merely provide vertical coverage. Likewise, courts in other jurisdictions also recognize the foregoing distinction between umbrella policies and excess policies as a general principle of insurance law." Sarka v. Love, Cuyahoga App. No. 85960, 2005-Ohio-6362. (Internal citations omitted.)
 {¶ 34} The Griewahn court held that the USF G excess policy at issue did not comport with R.C. 3937.18(L)(2), as amended by 1997 H.B. 261, which states "[a]ny umbrella liability policy of insurance."
 {¶ 35} However, we must apply R.C. 3937.18(L)(2), as amended by 1999 S.B. 57, which states "[a]ny umbrella policy of insurance written as excess over one or more policies described in division (L)(1) of this section." Here, the USF G policy was clearly written as excess over the commercial auto policy and general liability policies purchased by United Rentals. Therefore, this case is distinct from Griewahn in that we must consider the meaning of "excess over one or more policies described in division (L)(1) of this section." Therefore, Gilchrist is entitled to uninsured/underinsured motorist coverage under the commercial excess policy pursuant to R.C. 3937.18(L)(2).
III. Offer and Rejection of Uninsured/Underinsured MotoristCoverage {¶ 36} USF G next argues that it made a valid offer and rejection of uninsured/underinsured motorist coverage under both policies. We disagree. *Page 14 
 {¶ 37} The Ohio Supreme Court held that several requirements must be satisfied in order to evoke a valid offer of uninsured/underinsured motorist coverage:
 "To satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer; * * *." Linko v. Indemn. Ins. Co. of N. Am., 90 Ohio St.3d 445, 2000-Ohio-92.
 {¶ 38} It is well established that insurance policies subject to R.C.3937.18, as amended by 1999 S.B. 57, are subject to Linko. SeeKemper v. Mich. Millers Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101.
 {¶ 39} In applying the law to the facts of this case, USF G made offers of uninsured/underinsured motorist coverage in writing. However, said offers fail to comport with Linko because they do not indicate what the established premium would be.
 {¶ 40} Conversely, Gilchrist argues that United Rentals' rejection of uninsured/underinsured motorist coverage is invalid because it was not received by the insurance company prior to commencement of the policy period pursuant to Gyori v. Johnston Coca-Cola Bottling Group,76 Ohio St.3d 565, 1996-Ohio-358.
 {¶ 41} USF G disagrees and asserts that Gyori is superceded by statute, specifically, amended versions of R.C. 3937.18. USF G is correct in its assertion because R.C. 3937.18, as amended on October 21, 2001:
 "[Eliminated the requirement that UM/UIM coverage be offered with insurance policies. In passing the amendments, the General Assembly *Page 15 
expressed its intent to supercede the holdings in Gyori, Linko, and their progeny. See Section 3(E), Am. Sub. S.B. No. 97, 149 Ohio Laws, Part I, 779, 788-90 (`S.B. 97')." Marron v. USAA Cas. Ins. Co., 12th Dist. No. CA2005-07-204, 2006-Ohio-2247.
However, the Marron court concluded:
 "Concerning insurance policies executed before the S.B. 97 amendments, the issue remains whether a waiver of UM/UIM coverage received after the beginning of a policy term renders the rejection ineffective and warrants imposition of coverage as a matter of law. * * * Several Ohio courts have analyzed this issue and resolved that, in such situations, the rejection was ineffective as to the already-commenced policy period, but became effective when the next policy term began." Id. (Internal citations omitted.)
 {¶ 42} As such, we decline to apply later versions of R.C. 3937.18, and we find United Rentals' rejection of uninsured/underinsured motorist coverage ineffective as not received by USF G until after commencement of the policy period.
 {¶ 43} Therefore, we find that there is not a valid offer and rejection of uninsured/underinsured motorist coverage in the instant case.
IV. Gilchrist as an Insured {¶ 44} USF G argues that Gilchrist is not an insured under the commercial auto policy. We disagree.
 {¶ 45} An inferior court lacks the discretion to disregard a superior court's mandate in a prior appeal in the same case, save for extraordinary circumstances such as an intervening decision by the superior court. Nolan, supra. Here, on February 6, 2002, the trial court already found Gilchrist to be an insured under the commercial auto policy. See Gilchrist v. Gonsor, Cuyahoga App. No. 80944; 2003- *Page 16 
Ohio-2297; affirmed, Gilchrist I, supra. USF G does not invoke any extraordinary circumstances such as intervening case law to show exception to the law of the case doctrine on this issue. Therefore, we find that Gilchrist is an insured under the commercial auto policy.
 {¶ 46} Further, USF G argues that Gilchrist is not an insured under the commercial excess policy. A review of the policy reveals that the named insured listed on the declarations page of the commercial excess policy is "United Rentals, Inc.," and it is designated an "organization." The Ohio Supreme Court held, in Scott-Pontzer v. LibertyMut Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292, that:
 "It would be contrary to previous dictates of this court for us now to interpret the policy language at issue here as providing underinsured motorist insurance protection solely to a corporation without any regard to persons. Rather, it would be reasonable to conclude that `you,' while referring to Superior Dairy [corporate employer], also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, * * *."
 {¶ 47} As such, Gilchrist was clearly intended as an insured under the commercial excess policy. Gilchrist was working as a foreman at his work site on I-90 during work hours and, thus, was acting within the course and scope of his employment. See Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849; see, also, Hopkins v. Dyer (2004),104 Ohio St.3d 461, 2004-Ohio-6769. The fact that Gilchrist was a pedestrian and not in a covered auto has no bearing on the outcome of this case. The Ohio Supreme Court held that coverage exists where *Page 17 
plaintiff is a pedestrian. The Estate of Dillard v. Liberty Mut. Ins.Co., 86 Ohio St.3d 316, 1999-Ohio-177; see, also, Burke v. Buehler, 5th Dist. No. 2002 AP070061, 2003-Ohio-619.
 {¶ 48} In summary, uninsured/underinsured motorist coverage exists as a matter of law under the commercial auto policy in the amount of one million dollars; uninsured/underinsured motorist coverage exists as a matter of law under the commercial excess policy in the amount of two million dollars; there is not a valid offer and rejection of uninsured/underinsured motorist coverage under either policy, and Gilchrist is an insured under both policies.
 {¶ 49} Finally, Gilchrist appealed and asserted one assignment of error.
 "The trial court committed reversible error by granting USF G leave to file a second summary judgment motion on the insurance coverage issue."
 {¶ 50} "A trial court has discretion to grant leave to file a motion for summary judgment even though the action has been set for trial."DeTray v. Mount Carmel Health (1997), 10th Dist. No. 96APE08-1010, 1997 Ohio App. LEXIS 1542. Therefore, we apply an abuse of discretion standard when reviewing a trial court's grant of a motion for leave to file summary judgment. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. *Page 18 
 {¶ 51} Although the instant action was already set for trial, USF G filed its motion for leave to file a second motion for summary judgment based upon the following: first, the parties' first motions for summary judgment were only partial in nature and there remained pending other issues now ripe for summary judgment; and second, there existed intervening case law also ripe for the trial court's review in light of the fact the first motions for summary judgment were interlocutory on appeal.
 {¶ 52} USF G was correct in asserting that there remain additional issues ripe for summary judgment, including declaratory judgment as to the excess coverage policy, for example. In light of the foregoing analysis, USF G is also correct in asserting the existence of intervening case law for consideration, namely, Hollon. Therefore, it remains clear that the trial court did not act unreasonably, arbitrarily, or unconscionably in granting USF G's motion for leave to file a second motion for summary judgment.
 {¶ 53} Gilchrist's sole assignment of error is without merit.
 {¶ 54} Judgment of the trial court is affirmed and the case remanded to the trial court for further proceedings as to proximate cause and damages only, as all coverage issues have been addressed.
It is ordered that appellee and appellant share the costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 19 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., CONCURS
 CHRISTINE T. MCMONAGLE, J., CONCURS IN JUDGMENT ONLY *Page 1