[Cite as *Muskingum Watershed Conservancy Dist. v. Harper*, 2017-Ohio-1346.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MUSKINGUM WATERSHED.<br>CONSERVANCY DISTRICT, et al. | JUDGES:<br>Hon. W. Scott Gwin, P. J.<br>Hon. William B. Hoffman, J. |
| Appellees | Hon. John W. Wise, J. |
| -vs- | Case No. 16 CA 11 |
| LEATRA HARPER, et al. | |
| Defendants-Appellants | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No.  15 OG 186 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 10, 2017 |

APPEARANCES:

For Plaintiff-Appellee MWCD

JAMES J. PRINGLE
J. KEVIN LUNDHOLM
KYLER, PRINGLE, LUNDHOLM
& DURMANN LPA
405 Chauncey Avenue, NW, PO Box 668
New Philadelphia, Ohio  44663

PETER D. WELIN
McDONALD HOPKINS LLC
250 West Street, Suite 550
Columbus, Ohio  43215

For Defendants Appellants

JENSEN E. SILVIS
190 North Union Street, Suite 201
Akron, Ohio  44304

For Appellee Eclipse Resources

TIMOTHY B. McGRANOR
TIMOTHY J. COLE
VORYS, SATER, SEYMOUR and PEASE LLP
52 East Gay Street, PO Box 1008
Columbus, Ohio  43216-1008

For Appellee Antero Resources

LYLE B. BROWN
J. KEVIN WEST
STEPTOE & JOHNSON, PLLC
41 South High Street, Suite 2200
Columbus, Ohio  43215

*Wise, J.*

**{¶1}** Appellants Leatra Harper, Leslie Harper, and Steven Jansto appeal from the decision of the Court of Common Pleas, Guernsey County, denying their motion for summary judgment and granting a judgment on the pleadings in favor of Appellee Muskingum Watershed Conservancy District ("MWCD") in a declaratory judgment action. The relevant facts leading to this appeal are as follows.

**{¶2}** Appellee MWCD owns certain real estate in Guernsey County and Noble County, in the vicinity of the Senecaville Reservoir. Appellants are the owners of real property in Senecaville, Ohio.

**{¶3}** On or about February 21, 2013, MWCD, as lessor, entered into an oil and gas lease with Appellee Antero Resources Corporation as lessee, concerning approximately 7,000 acres of land in Guernsey and Noble Counties. A memorandum of lease was recorded on February 22, 2013 in the Noble County Recorder's Office. An additional memorandum of oil and gas lease was recorded on February 22, 2013 in the Guernsey County Recorder's Office.

**{¶4}** On October 1, 2013, prior to the initiation of litigation in the present case, appellants filed a lawsuit in the Franklin County Court of Common Pleas. Among their claims in that suit was an allegation that MWCD lacks statutory authority to enter into oil and gas leases. Said case was removed to the United States District Court for the Southern District of Ohio (in Columbus, Ohio), but it was voluntarily dismissed by appellants on December 29, 2014. Appellants indicated in their motion for voluntary dismissal in federal court that they intended to pursue their state law claims in the state courts of Ohio.

**{¶5}** Furthermore, at the time of the commencement of the subject declaratory judgment action, appellants were plaintiffs in a separate federal False Claims Act case filed against appellees in the United States District Court for the Northern District of Ohio (in Akron, Ohio).

**{¶6}** On May 7, 2015, Appellee MWCD filed an action in the Guernsey County Court of Common Pleas (hereinafter "trial court") seeking declaratory relief. The complaint was later amended to include as defendants Antero Resources, Eclipse Resources, and the Ohio Department of Natural Resources. Specifically, MWCD requested a declaration that has the authority under Ohio law to enter into leases related to the extraction of mineral rights (potentially including horizontal hydraulic fracturing or "fracking"), and a declaration that the subject lease with Appellees Antero Resources and Eclipse Resources is valid and enforceable.

**{¶7}** On October 5, 2015, Appellee MWCD filed a motion for judgment on the pleadings. On December 14, 2015, appellants filed a motion for summary judgment, with exhibits.

**{¶8}** On May 6, 2016, the trial court issued a judgment entry granting MWCD's motion for judgment on the pleadings, thereby holding *inter alia* that MWCD was statutorily empowered to enter into the subject oil and gas lease. On the same day, the trial court issued a judgment entry denying appellants' motion for summary judgment.

**{¶9}** On June 1, 2016, appellants filed a notice of appeal. They herein raise the following three Assignments of Error:

**{¶10}** "I. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO PROPERLY ASSESS THE JUSTICIABILITY OF DECLARATORY RELIEF AS AN APPROPRIATE REMEDY IN THE INSTANT CASE.

**{¶11}** "II. THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS WHILE CONCLUDING APPELLANTS COULD PROVE NO SET OF FACTS TO SUPPORT THEIR POSITION.

**{¶12}** "III. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANTS' MOTION FOR SUMMARY JUDGMENT BASED UPON THE APPLICABLE LEGAL STANDARD."

I.

**{¶13}** In their First Assignment of Error, appellants contend the trial court abused its discretion by allowing declaratory relief as an appropriate remedy. We disagree.

**{¶14}** R.C. 2721.02(A) states in pertinent part: "Subject to division (B) of this section, courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed. * * *."

**{¶15}** "The purpose of the Declaratory Judgment Act is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. It is remedial in nature and is to be liberally construed and administered." *Wilkins v. Harrisburg*, 56 N.E.3d 320, 2015-Ohio-5472, ¶ 20 (10th Dist. Franklin). The granting of declaratory judgment relief is a matter of judicial discretion. *Stark–Tuscarawas–Wayne Joint Solid Waste Management Dist. v. Republic Services of Ohio II, LLC,* Stark App. No. 2004–CA–00099, 2004 WL 2406553, ¶ 12, citing *Control Data Corp. v. Controlling Bd. of Ohio* (1983), 16 Ohio App.3d 30, 35, 16 OBR 32, 36–38, 474 N.E.2d 336, 342. The term

abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. The Ohio Supreme Court has concluded: "[A] determination as to the granting or denying of declaratory relief is one of degree. Although this court might agree or disagree with that determination, our decision must be whether such a determination is reasonable." *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 37, 303 N.E.2d 871.

**{¶16}** Appellants herein essentially dispute that the underlying facts in the case *sub judice* gave rise to a current and actual controversy for which declaratory judgment was appropriate under R.C. Chapter 2721. In other words, appellants contend this matter lacks the requisite jurisdictional basis for a declaratory judgment action. They urge that Appellee Antero, being in contractual privity with MWCD, is not a "genuine defendant" in the declaratory judgment action, and that the Ohio Department of Natural Resources is also not in an adverse position versus MWCD. Appellants also urge that while they have been in a legally antagonistic relationship with MWCD in the past, it is not presently adversarial.

**{¶17}** We have generally recognized that an appellate court is not required to render an advisory opinion or to rule on a question of law that cannot affect matters at issue in a case. *See Ambrose v. Galena,* 5th Dist. Delaware No. 15 CAH 01 0011, 2015–Ohio–3157, ¶ 29, citing *State v. Bistricky* (1990), 66 Ohio App.3d 395, 584 N.E.2d 75. Likewise, Ohio has a long-standing tradition that trial courts do not render advisory opinions. *See Mid-American Fire & Casualty Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, ¶ 9. We have also specifically held that in order to obtain declaratory relief,

the proceeding must be based on an actual controversy, and declaratory judgment does not lie to obtain an advisory opinion or answer an abstract question in a hypothetical situation. *Mansfield Plumbing Products LLC v. Estate of Sparks,* Richland App. No. 2004–CA–0094, 2005–Ohio–3121, ¶ 10.

{¶18} The word "actual" is one of "emphasis rather than definition." *Johnson v. Denton, Dept. of Rehab. & Correction*, 3rd Dist. Marion No. 9-81-20, 1981 WL 6692, quoting Borchard, *Declaratory Judgments,* 40 (1934) (additional case references and internal quotation marks omitted). Furthermore, " 'controversy' contemplates a justiciable controversy, hence appropriate for judicial determination, and is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be 'definite and concrete [***] as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Id.* (additional case references and internal quotation marks omitted).

{¶19} Under the circumstances presented in the case *sub judice*, given the patent undercurrent of past and potential litigation between the pertinent parties, going well beyond a merely hypothetical dispute, we find no abuse of discretion in the trial court's determination that declaratory relief was an available remedy for resolution of the case.

{¶20} Appellants' First Assignment of Error is therefore overruled.

III.

{¶21} In their Third Assignment of Error, which we will address out of sequence, appellants argue the trial court erred in denying their motion for summary judgment. We disagree.

*Appellate Jurisdiction*

{¶**22**}  We initially must consider the issue of final appealability. The denial of a motion for summary judgment generally is not a final, appealable order. *See Dalton v. Romano*, 2012-Ohio-5462, 982 N.E.2d 1275, ¶ 16 (5th Dist. Stark), citing *State ex rel. Overmeyer v. Walinski* (1966), 8 Ohio St.2d 23, 222 N.E.2d 312. However, in a declaratory action, a resolution setting forth the rights and responsibilities of the parties is a final order. *See* R.C. 2721.02(A). Thus, in declaratory actions, an appellate court will "treat a denial of summary judgment as a resolution of the action if the trial court sets forth the rights and responsibilities of the parties in its denial of summary judgment." *Griewahn v. United States Fid. & Guar. Co.*, 160 Ohio App.3d 311, 2005-Ohio-1660, 827 N.E.2d 341, ¶ 8 (7th Dist. Mahoning). Furthermore, a denial of a motion for summary judgment is always reviewable on appeal following a subsequent final judgment. *Yates v. Allstate Ins. Co.,* 5th Dist. Licking No. 04 CA 39, 2005-Ohio-1479, 2005 WL 724499, ¶ 36.

{¶**23**}  In the case *sub judice*, the trial court's denial of appellants' motion for summary judgment was issued simultaneously with the trial court's entry of judgment on the pleadings in favor of Appellee MWCD. Under these circumstances, we find we have appellate jurisdiction to review to the summary judgment issue.[1]

---

[1]  Although it will not impact our present analysis, we note one appellate court has observed: "The purpose of a declaratory judgment action is to set forth the rights and responsibilities of the parties and does not contain any material issues of fact. Thus, the filing of a motion for summary judgment in a declaratory judgment action is not a good practice because it does not resolve the issues before the trial court." *Am. Modern Home Ins. Co. v. Hagopian*, 3rd Dist. Crawford No. 3-02-23, 2003-Ohio-342, ¶ 7.

*Standard of Review*

{¶24}  Civ.R. 56(C) states in pertinent part: "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."

{¶25}  As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *See Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St .3d 35, 506 N.E.2d 212.

*Analysis*

{¶26}  The Muskingum Watershed Conservancy District ("MWCD") was created in 1933 as part of a comprehensive flood control and water conservation project. The boundaries of the MWCD comprise all, or part of, eighteen counties in eastern Ohio. The water which runs off the land within the MWCD drains into the Muskingum River, which then flows into the Ohio River at Marietta, Ohio. *See Walker v. Muskingum Watershed Conservancy Dist.*, 5th Dist. Tuscarawas No. 2007 AP 09 0065, 2008-Ohio-6901, ¶ 2. To

manage the flow of water in the MWCD, a number of dams and reservoirs have been constructed. *Id.* The MWCD is a political subdivision of the State of Ohio, organized under R.C. 6101. Therefore, our primary focus herein will be upon various provisions under R.C. 6101, commonly referred to as Ohio's Conservancy Act.

**{¶27}** R.C. 6101.04 addresses the "**o**rganization and purposes of conservancy districts" as follows:

**{¶28}** "Any area or areas situated in one or more counties may be organized as a conservancy district in the manner and subject to the conditions provided by this chapter for any of the following purposes:

**{¶29}** "(A) Preventing floods;

**{¶30}** "(B) Regulating stream channels by changing, widening, and deepening the stream channels;

**{¶31}** "(C) Reclaiming or filling wet and overflowed lands;

**{¶32}** "(D) Providing for irrigation where it may be needed;

**{¶33}** "(E) Regulating the flow of streams and conserving their waters;

**{¶34}** "(F) Diverting or in whole or in part eliminating watercourses;

**{¶35}** "(G) Providing a water supply for domestic, industrial, and public use;

**{¶36}** "(H) Providing for the collection and disposal of sewage and other liquid wastes produced within the district;

**{¶37}** "(I) Arresting erosion along the Ohio shore line of Lake Erie.

**{¶38}** \*\*\*."

**{¶39}** R.C. 6101.08 additionally states: "\*\*\* A district so organized shall be a political subdivision of the state and a body corporate *with all the powers of a corporation*,

and shall have perpetual existence, with power to sue and be sued, to incur debts, liabilities, and obligations, to exercise the right of eminent domain and of assessment as provided in this chapter, to issue bonds, and to do all acts necessary and proper for the carrying out of the purposes for which the district was created and for executing the powers with which it is invested. ***. (Emphasis added.)

{¶40} Additional provisions under the Conservancy Act require a judicial decree to establish an official plan for a conservancy district. In the case of the MWCD, such a judicial decree was issued in June 1933 setting forth *inter alia*:

{¶41} "[T]he purposes for which said District is established are as follows:

{¶42} "Preventing floods, and conserving flood waters for beneficial uses;

{¶43} "Regulating stream channels by changing, widening and deepening the same;

{¶44} "Reclaiming and filling wet and overflowed lands;

{¶45} "Providing for irrigation where it may be needed;

{¶46} "Regulating the flow of streams;

{¶47} "Diverting, or in whole or in part eliminating, water courses; and incident to such purposes and to enable their accomplishment, to straighten, widen, deepen, change, divert, or change the course or terminus of, any natural or artificial water course; to build reservoirs, canals, levees, walls, embankments, bridges or dams; to maintain, operate and repair any of the construction herein named; and to do all other things necessary for the fulfillment of the purposes of the proposed district, such as forestation, the building of check dams and other control works to prevent soil erosion and the consequent clogging of stream channels."

**{¶48}** 1933 Judicial Decree, Case No. 21639, at 1.

**{¶49}** R.C. 6101.15(K) states that "[i]n order to accomplish the purposes of the conservancy district, the board of directors of a conservancy district may *** "[h]old, encumber, control, acquire by donation, purchase, or condemnation, construct, *own, lease, use, and sell real and personal property*, and any easement, riparian right, railroad right of way, canal, cemetery, sluice, reservoir, holding basin, milldam, water power, wharf, or franchise in or out of the district for right of way, holding basin, location, or protection of works and improvements, relocation of communities and of buildings, structures, and improvements situated on lands required by the district, or any other necessary purpose, or for obtaining or storing material to be used in constructing and maintaining the works and improvements." (Emphasis added).

**{¶50}** R.C. 6101.15(O) adds that the board of directors of a conservancy district may "[d]o all things necessary or incident to the fulfillment of the purposes for which the district is established."

**{¶51}** The aforesaid authority leads us to first conclude that the MWCD is clearly in the category of political subdivisions imbued with "corporate" powers. R.C. 6101.08, *supra*. The Ohio Supreme Court has long recognized that " 'implied powers which a corporation has in order to carry into effect those expressly granted and accomplish the purposes of its creation, are not limited to such as are indispensable for these purposes, but comprise all that are necessary in the sense of appropriate, convenient, and suitable, including the right of reasonable choice of means to be employed.'" *London & Lancashire Indem. Co. of America v. Fairbanks Steam Shovel Co.*, 112 Ohio St. 136, 143, 147 N.E. 329, Ohio Law Abs. 130 (1925), quoting *Central Ohio Natural Gas & Fuel Co. v. Capital*

*City Dairy Co.*, 60 Ohio St. 96, 53 N.E. 711, 64 L.R.A. 395 (1899). By analogy, the Ohio Supreme Court has held that a regional transit authority was statutorily empowered to lease its rail line and right-of-way and to make charges for the use of its transit facilities. *See Silver Lake v. Metro Regional Transit Auth.*, 111 Ohio St.3d 324, 2006-Ohio-5790, 856 N.E.2d 236, ¶ 22. Similar to MWCD, the General Assembly had granted MRTA certain express statutory powers, including the authority to lease transit facilities "within or without its territorial boundaries, considered necessary to accomplish the purposes of its organization ***." *Silver Lake* at ¶ 14, quoting R.C. 306.35(G). The statute also expressly authorized MRTA to *"lease* as lessee or lessor *** *real and personal property \*\*\** for the location or *protection of transit facilities and improvements and access* to transit facilities and improvements and access to transit facilities *** or *for any other necessary purpose \*\*\*." Id.* at ¶ 16, quoting R.C. 306.35(J) (emphasis in original).

{¶52} Appellants herein invoke the maxim of *expressio unius est exclusio alterius* and the doctrine of *ejusdem generis* in support of their argument, noting that oil and gas drilling is not among the stated purposes of the MWCD. However, appellants appear to confuse the separate concepts of a conservancy district's statutory "purposes," which pertain to the organizing and formation of the district, and its statutory "powers," which pertain to its ongoing functioning as a legislatively-created corporation. The General Assembly has expressly granted conservation districts like MWCD the power to enter into contracts (R.C. 6101.23) and to "lease, use, and sell real and personal property" (R.C. 6101.15(K)), *supra.* Furthermore, Chapter 6101 "shall be liberally construed to effect the control, conservation, and drainage of the waters" of Ohio (R.C. 6101.80), and such liberal construction must be applied in addressing the District's powers, the only issue presently

before us. While appellants consistently urge that the allowance of oil and gas drilling and potential "fracking" processes on MWCD lands does not fulfill the purposes of flood control and water conservation, the wisdom of the District's Board's decision to enter into the subject drilling leases and the possibility of future environmental impacts are not questions before us at this time and were not before the trial court.

{¶53} Accordingly, upon review, we hold the trial court did not err in denying appellants' motion for summary judgment and proceeding to a declaratory judgment review in favor of appellees.

{¶54} Appellants' Third Assignment of Error is overruled.

II.

{¶55} In their Second Assignment of Error, appellants maintain the trial court erred in granting a judgment on the pleadings in favor of MWCD. We disagree.

{¶56} Motions for judgment on the pleadings are governed by Civ.R. 12(C), which states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Civ.R. 12(C) "requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931, 936. The very nature of a Civ.R. 12(C) motion is specifically designed for resolving solely questions of law. *See Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 297 N.E.2d 113, 117. Appellate review will be done independent of the trial court's analysis to determine whether the moving party was entitled to judgment as a matter of law. *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 772, 623 N.E.2d 185, 188,

abrogated on other grounds by *Simmerer v. Dabbas,* 89 Ohio St.3d 586, 733 N.E.2d 1169, 2000–Ohio–232.*.*

{¶57}  Both the present Second Assignment of Error and the Third Assignment of Error center on the same basic issue, *i.e.,* whether MWCD is legally empowered to enter into mineral extraction and/or oil and gas leases. Appellants sought relief on this issue via a motion for summary judgment, while the MWCD sought relief in the form of a motion for judgment on the pleadings.

{¶58}  Based on our previous analysis herein, we find no error in the trial court's grant of judgment on the pleadings under the facts and circumstances presented.

{¶59}  Appellants' Second Assignment of Error is overruled.

{¶60}  For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby affirmed.


By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.


JWW/d 0322