[Cite as *Campbell v. Licking Hts. Local School Dist.*, 2019-Ohio-2733.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STEPHEN A. CAMPBELL | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2019 CA 00006 |
| LICKING HEIGHTS LOCAL S.D., et al. | |
| | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common
Pleas, Case No.  2018 CV 00488


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    July 1, 2019


APPEARANCES:

For Plaintiff-Appellant

STEPHEN A. CAMPBELL
PRO SE
Post Office Box 14354
Columbus, Ohio  43214

For Defendants-Appellees YMCA & Gibson

MICHAEL R. HENRY
CRABBE, BROWN & JAMES LLP
500 South Front Street, Suite 1200
Columbus, Ohio  43215

*Wise, J.*

**{¶1}** Plaintiff-Appellant Stephen A. Campbell appeals the decision of the Court of Common Pleas, Licking County, which granted summary judgment in favor of Defendants-Appellees Licking County Family YMCA and Brianna Michelle Gibson in a libel action filed by appellant. The relevant facts leading to this appeal are as follows.

### 1. Events of February 14, 2018

**{¶2}** According to the underlying civil complaint in this matter, Appellant Campbell went to Licking Heights South Elementary School (LHSE) on February 14, 2018, in order to deliver a Valentine's Day present to his daughter, who was at that location participating in an after-school program run by the YMCA. At the time, appellant and his ex-wife, Nichole Campbell, were involved in adversarial proceedings in a domestic relations matter in Franklin County, Ohio.

**{¶3}** Appellant asserted in his aforementioned complaint that he took the gift (a balloon and homemade cookies) to the school office and then departed the premises immediately. It appears undisputed that he had no interaction with his daughter during this visit to the school. However, one of the YMCA employees, Kathalyn Gensler-Nic, observed that the daughter, visibly upset by the gift, subsequently threw most of it away. *See* Gensler-Nic Tr. at 15.

### 2. Events of March 15, 2018

**{¶4}** Approximately one month later, appellant found out that Gensler-Nic's name had come up on an amended witness list prepared by appellant's ex-wife's attorney in the Franklin County domestic relations case, concerning an "[i]ncident in 2018 when [appellant] came to the child's school." *See* Plaintiff's Complaint Exhibit A.

{¶5} According to the underlying complaint in the present case, appellant went to LHSE again on the afternoon of March 15, 2018, this time to discuss the aforesaid matter with Gensler-Nic. Complaint at paragraph 14. Gensler-Nic later recalled that during their discussion, appellant referred to his ex-wife as "the devil." Franklin County Tr. at 13.[1] Appellant also told Gensler-Nic that he would be obtaining a subpoena for her for participation in future proceedings. *Id.*

{¶6} Gensler-Nic felt uncomfortable during the aforesaid conversation, and she reported the encounter with appellant to her YMCA supervisors. As a result, Gensler-Nic completed and signed two internal YMCA "incident reports," one concerning February 14, 2108, and one concerning March 15, 2018.

### 3. Events of March 22, 2018

{¶7} On March 22, 2018, appellant went to LHSE a third time, this time to deliver a subpoena to Gensler-Nic. On this occasion, the front doors to the school had already been locked. As appellant waited outside, his daughter saw him from inside and began to cry. Brianna Gibson, another YMCA employee, then went to the front entrance and partially opened one of the doors. Appellant asked to speak to Gensler-Nic, but Gibson informed him she was not available. Gibson asked him twice to leave, and he did so after the second request. Franklin County Tr. at 45-47.

---

[1] The record in the case *sub judice* includes photocopied portions of a transcript from the Franklin County Court of Common Pleas, Domestic Relations Division. Although not formally part of our appellate record in certified form, the parties have both used periodic references to said transcript in their briefs.

**{¶8}** After speaking with her supervisors, Gibson contacted law enforcement. A Pataskala police officer arrived and took a report. Gibson also completed and signed internal YMCA incident reports.

*Court Proceedings*

**{¶9}** On May 7, 2018, Appellant Campbell filed a *pro se* civil complaint in the Licking County Court of Common Pleas ("trial court") against the Licking Heights Local School District, Philip Wagner, Ph.D., the Licking County YMCA Foundation, Brianna Gibson, and Nichole Campbell. The complaint set forth two causes of action: (1) Filing a False Police Report and (2) Libel.

**{¶10}** Appellees Licking County YMCA Foundation (also identified in the record as Licking County Family YMCA) and Brianna Gibson filed an answer on May 23, 2018.

**{¶11}** In July 2018, the school district, Dr. Wagner, and Nichole Campbell were all dismissed from the lawsuit by order of the trial court.

**{¶12}** On November 29, 2018, Licking County Family YMCA and Brianna Gibson (hereinafter "appellees") jointly filed a motion for summary judgment. Appellant filed a memorandum contra on December 17, 2018. Appellees filed a reply memorandum on December 19, 2018. Appellant filed a surreply on December 24, 2018.

**{¶13}** On January 10, 2019, the trial court issued a judgment entry granting summary judgment in favor of appellees.

**{¶14}** On February 8, 2019, 2019, appellant filed a *pro se* notice of appeal. He herein raises the following seven Assignments of Error:

**{¶15}** "I. THE TRIAL COURT ERRED BY GRANTING APPELLEES' JOINT MOTION FOR SUMMARY JUDGMENT WHEN A KEY PIECE OF MATERIAL

EVIDENCE, THE POLICE REPORT, WAS MISREAD AND/OR IMPROPERLY REFERENCED.

{¶16} "II. THE TRIAL COURT ERRED BY GRANTING APPELLEES' JOINT MOTION FOR SUMMARY JUDGMENT WHEN ANOTHER KEY PIECE OF MATERIAL EVIDENCE, A CLEAR DVD COPY OF THE SURVEILLANCE VIDEO, WAS IGNORED.

{¶17} "III. THE TRIAL COURT ERRED BY GRANTING APPELLEES' JOINT MOTION FOR SUMMARY JUDGMENT WHEN APPELLEES PRODUCED NO MATERIAL EVIDENCE AT ALL.

{¶18} "IV. THE TRIAL COURT ERRED BY GRANTING APPELLEES' JOINT MOTION FOR SUMMARY JUDGMENT WHILE APPELLANT WAS STILL INVESTIGATING AND HAD SUBPOENAED MULTIPLE WITNESSES FOR TRIAL.

{¶19} "V. THE TRIAL COURT ERRED BY GRANTING APPELLEES' JOINT MOTION FOR SUMMARY JUDGMENT USING PRIVILEGE AS A DEFENSE.

{¶20} "VI. THE TRIAL COURT ERRED BY GRANTING APPELLEES' JOINT MOTION FOR SUMMARY JUDGMENT WHEN, BY LETTER OF THE LAW, SIX CRIMINAL ACTS COMMITTED BY APPELLEES WERE IGNORED, THEREBY EXCUSING ACTUAL MALICE AND NEGLIGENCE.

{¶21} "VII. THE TRIAL COURT ERRED BY GRANTING APPELLEES' JOINT MOTION FOR SUMMARY JUDGMENT WHEN APPELLANT'S PLEA FOR SPECIAL DAMAGES WAS IGNORED."

{¶22} This case comes to us on the accelerated calendar. App.R. 11.1 governs accelerated calendar cases, stating in pertinent part: "*** It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error

to be in brief and conclusionary form." *See, e.g.*, *State v. Wertman*, 5th Dist. Ashland No. 18 COA 026, 2019-Ohio-7, ¶ 3.

**{¶23}** As an initial matter, we note appellant's *pro se* brief does not comply with App.R. 16 in several respects. Among other things, although there are apparent Loc.App.R. 9(A)(2) portions of the brief marked "Declaration of Claims" and "Trial Court's Claims," there is no statement of the case. *See* App.R. 16(A)(5). The main body of the brief commences with a very brief statement of facts, but it transitions without break into a series of legal arguments which run approximately thirty-three pages. This argument section is broken into seven subsections, which do not completely correlate with the seven assigned errors. (For example, the fourth subsection is captioned simply as "Common Law.") *See* App.R. 16(A)(6) and (7).

III.

**{¶24}** In his Third Assignment of Error, which we will address out of sequence, appellant contends the trial court erred in granting summary judgment in favor of appellees. We disagree.

**{¶25}** Civ.R. 56(C) states in pertinent part: "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion

is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."

**{¶26}** As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Muskingum Watershed Conservancy Dist. v. Harper*, 5th Dist. No. 16 CA 11, 2017-Ohio-1346, 90 N.E.3d 71, ¶25, citing *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 506 N.E.2d 212.

**{¶27}** Actionable defamation falls into one of two categories: defamation *per se* or defamation *per quod*. *Woods v. Capital Univ.*, 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶ 28. Defamation *per se* occurs when a statement, on its face, is defamatory. *Id.* at ¶ 29. To survive a summary judgment on a defamation claim, a plaintiff is required to establish five elements: (1) a false and defamatory statement of fact; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) which was either defamatory per se or caused special harm to the plaintiff. *Hurst v. Moore*, 5th Dist. Licking No. 17-CA-4, 2017-Ohio-7238, ¶ 20, citing *Davis v. Johnson*, 5th Dist. Richland No. 07 CA 40, 2007–Ohio–6567.

**{¶28}** Although the focus of appellant's *pro se* defamation complaint appears to be on YMCA employee Brianna Gibson's actions, appellant therein also referenced YMCA co-worker Gensler-Nic's treatment of the February 14, 2018 events as an official "incident" and her report that at the March 15, 2018 visit appellant made to LHSE, he called his ex-wife "the devil." *See* Complaint at ¶¶ 14-15. Appellant thus appears to

contend that Gensler-Nic's alleged use of the term "incident" and her statement that appellant had called his ex-wife "the Devil" were defamatory *per se.*

**{¶29}** In the partial transcript of proceedings from the Franklin County Court of Common Pleas, Domestic Relations Division (*see* footnote 1 herein), Gensler-Nic conceded she may have been wrong about what exactly she heard during the alleged name-calling incident; however, appellant (who in the transcript was cross-examining Gensler-Nic *pro se*) indicated that he did at least call his ex-wife "evil." *See* Franklin Tr. at 26-27. Upon review, we find reasonable minds could only conclude that Gensler-Nic's actions did not constitute defamation under the circumstances presented.

**{¶30}** The complaint as to YMCA employee Brianna Gibson goes to an allegedly "defamatory Pataskala Police Report." *See* Complaint at ¶ 26.[2] This stems from the events of March 22, 2018, when appellant visited LHSE a third time, on that occasion for the purpose of delivering a subpoena to Gensler-Nic for the Franklin County proceedings. In the underlying complaint in the case *sub judice*, appellant alleged that when he asked for Gensler-Nic at the front doors of the school, Gibson said she was unavailable and "exclaimed" that he needed to leave the premises. Complaint at ¶16. Appellant then asked to leave the subpoena at the office, which Gibson would not permit. *Id.* Gibson thereafter filed a police report, even though she gave no indication to appellant that she intended to do so. *Id.* According to the written report of Pataskala police officer

---

[2] Appellant also presented a civil claim for filing a false police report, which the trial court did not analyze, on the grounds that no common law action was recognized for same. Judgment Entry, January 10, 2019, at 1. Appellant does not herein specifically challenge this conclusion. In addition, to the extent that appellant is claiming libel in Gibson's statements in the Franklin County domestic relations proceedings, such testimony would be considered absolutely privileged. *See, e.g. Myers v. Steiner,* 9th Dist. Summit No. 25166, 2011-Ohio-576, ¶ 15.

Adam Beach: "Brianna [Gibson] advised Mr. Campbell that he was not to be there on the property and to leave. Brianna stated that Mr. Campbell *tried to come past her* anyways." *See* Exhibit D (emphasis added). In essence, the gravamen of appellant's complaint on this point thus appears to be that Gibson defamed him by inferring that he attempted to force his way into the school building.

{¶31} However, even assuming *arguendo* that appellant has established *prima facie* defamation based upon Gibson's report to law enforcement, it has long been recognized in Ohio that private citizens are qualifiedly privileged to give information to proper governmental authorities for the purpose of crime prevention or detection. *Hartung-Teter v. McKnight*, 3rd Dist. Defiance No. 4-91-2, 1991 WL 117274. "A qualified privilege may be defeated only if a claimant proves with convincing clarity that a publisher acted with actual malice." *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9, citing *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus. Actual malice is defined as acting with knowledge the statements are false or with reckless disregard of the truth or falsity of the statements. *Dixon v. Northridge Local School Dist. Bd. of Edn.*, 5th Dist. Licking No. 2007-CA-101, 2008-Ohio-2744, ¶ 73. Furthermore, "[t]he question *** is whether a reasonable listener would interpret the words used to be language that normally conveys factual information or mere hyperbole or opinion." *Niotti-Soltesz v. Piotrowski*, 11th Dist. Trumbull No. 2016-T-0072, 2017-Ohio-711, 86 N.E.3d 1, ¶ 19 (additional citations omitted).

{¶32} Upon review, we find reasonable minds could only conclude that Gibson's actions in reporting her recollection of the entrance-door encounter, for purposes of a standard police report, as part of her role in running a program involving the supervision

of minor children, did not entail actual malice so as to defeat her qualified privilege as to the defamation claims.

**{¶33}** Appellant's Third Assignment of Error is therefore overruled.

I.

**{¶34}** In his First Assignment of Error, appellant maintains the trial court erroneously misread or improperly referenced the Pataskala police report initiated by YMCA employee Brianna Gibson. Based on our above analysis, we find no basis for reversal on this basis as urged by appellant.

**{¶35}** Appellant's First Assignment of Error is overruled.

II.

**{¶36}** In his Second Assignment of Error, appellant challenges the granting of summary judgment, alleging that the trial court ignored a surveillance video taken at LHSE.

**{¶37}** There is a presumption that the trial court considered all the evidence in rendering a decision on summary judgment. *Kincer v. Am. Brick & Block, Inc.*, 2nd Dist. Miami No. 16073, 1997 WL 24808, citing *Roberts v. Luneau-Gordon*, 2nd Dist. Montgomery No. 15212, 1995 WL 703898. Furthermore, a *de novo* review by this Court of the video in question (Exhibit H of the original complaint)[3] does not compel us to reverse the grant of summary judgment in this matter.

**{¶38}** Appellant's Second Assignment of Error is overruled.

---

[3] Appellant does not clarify in his brief if he authenticated the video for purposes of Civ.R. 56(C). *See, e.g. Adams v. Ward,* 7th Dist. Mahoning No. 09 MA 25, 2010-Ohio-4851, ¶ 13.

IV.

**{¶39}** In his Fourth Assignment of Error, appellant contends the trial court erred in granting summary judgment in favor of appellees while he was still investigating the matter and obtaining witnesses.

**{¶40}** Pursuant to Civ.R. 56(F), a party opposing summary judgment may seek a continuance to pursue further discovery in order to develop its opposition to the motion. *Polaris Ventures IV, Ltd. v. Silverman*, 5th Dist. Delaware No. 2005 CAE 11 0080, 2006-Ohio-4138, ¶ 14, citing *Vilardo v. Sheets,* 12th Dist. Clermont App. No. CA2005-09-091, 2006-Ohio-3473, ¶ 29.

**{¶41}** In the case *sub judice*, it does not appear from the trial court record that appellant made such a request; furthermore, appellees did not file for summary judgment until the discovery cutoff date had passed.

**{¶42}** Appellant's Fourth Assignment of Error is therefore overruled.

V.

**{¶43}** In his Fifth Assignment of Error, appellant contends the trial court erred in relying upon the defense of privilege in granting summary judgment. We disagree.

**{¶44}** We have previously addressed the issue of qualified privilege in our redress of appellant's third assigned error, *supra*. Appellant's additional arguments do not compel us to presently come to a different conclusion, including our determination as to a lack of a demonstration of actual malice on the part of appellees. Appellant himself cites the apropos recognition, given the physical setting in which this dispute originated, that "educators and parents share a common interest in the training, morality and well-being of the children in their care." *Daubenmire v. Sommers*, 12th Dist. Madison No.

CA2003-03-014, 156 Ohio App.3d 322, 2004-Ohio-914, 805 N.E.2d 571, ¶ 122, citing *McCartney v. Oblates of St. Francis deSales* (1992), 80 Ohio App.3d 345, 356, 609 N.E.2d 216.

**{¶45}** Appellant's Fifth Assignment of Error is overruled.

VI.

**{¶46}** In his Sixth Assignment of Error, appellant further challenges the granting of summary judgment, essentially alleging that appellees committed "six criminal acts" which the trial court ignored.

**{¶47}** Appellant appears to argue that the crimes of which he presently accuses appellees (to wit: falsification, perjury, obstructing justice, tampering with records, fraud, and intimidation) demonstrate that actual malice was present. Again, however, appellant fails to persuade us that reversal of summary judgment is warranted in this matter.

**{¶48}** Appellant's Sixth Assignment of Error is overruled.

VII.

**{¶49}** In his Seventh Assignment of Error, appellant maintains the trial court ignored his request for special damages.

**{¶50}** We first note appellant reaches a point in this assigned error where his brief begins to run past the thirty-page limit set forth in Loc.App.R. 9. In any event, appellant's argument somewhat confusingly tries to expound upon subjects such as degrees of culpability under R.C. 2901.22, intentional infliction of emotional distress, and punitive damages. While an appellate court may make allowances for *pro se* litigants, within limits, it is "not required to craft well-articulated claims from poorly drafted arguments." *See HSBC Bank USA NA v. Beins*, 6th Dist. Lucas No. L-13-1067, 2014-Ohio-56, ¶ 7.

**{¶51}**  Appellant's challenge on the issue of special damages is found to be without merit.

**{¶52}**  Appellant's Seventh Assignment of Error is overruled.

**{¶53}**  For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/d 0613