**[Cite as *Zamlen-Spotts v. Cleveland State Univ.*, 2021-Ohio-2704.]**

| | |
|---|---|
| JUDY ZAMLEN-SPOTTS | Case No. 2021-00087PQ |
| Requester | Special Master Jeff Clark |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| CLEVELAND STATE UNIVERSITY | |
| Respondent | |

{¶1} Ohio's Public Records Act, R.C. 149.43, provides that upon request, a public office "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Ohio courts construe the Public Records Act liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 12. This action is filed under R.C. 2743.75, which provides an expeditious and economical procedure to enforce alleged violations of R.C. 149.43(B).

{¶2} On December 28, 2020, requester Judy Zamlen-Spotts made a public records request to respondent Cleveland State University (CSU): "C.S.U. conducted a survey for our community, the Township of Chesterland [sic].[1] I want a copy of the returned surveys, etc." (Complaint at 2-3.) On January 7, 2021, CSU denied the request, stating that "such records are intellectual property records which are exempt from the Ohio Public Records Act per R.C. 149.43(A)(5). See also *Walker v. Ohio State Univ. Bd. of Trs.*, 2010-Ohio-373." (Complaint at 4.) On February 16, 2021, Zamlen-Spotts filed this action pursuant to R.C. 2743.75 alleging denial of access to public records in violation

---

[1] Chesterland, Ohio is a census-designated place, a demographic label that has no legal significance. *See* https://en.wikipedia.org/wiki/Chesterland,_Ohio (Accessed June 29, 2021.)

of R.C. 149.43(B). Following unsuccessful mediation, CSU filed a combined response to the complaint and motion to dismiss (Response) on May 14, 2021. Zamlen-Spotts filed a reply on June 7, 2021.

**Burdens of Proof**

{¶3} Ohio's Public Records Act (PRA or Act) is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 7. In an enforcement action under R.C. 2743.75, a requester must establish any public records violation by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.).

{¶4} If a public office asserts an exception to the PRA, the burden of proving the exception rests on the public office. *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, 101 N.E.3d 396, ¶ 15. Exceptions to disclosure under the Act must be strictly construed against the public-records custodian, and the custodian bears the burden to establish applicability of the exception. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 7. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. *Id.*; *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt should be resolved in favor of disclosure of public records. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994).

**Motion to Dismiss**

{¶5} In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Then, before the court may dismiss the complaint, it

must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶6} CSU moves to dismiss the complaint on the ground that the requested records are exempt from disclosure as intellectual property records. On consideration of CSU's motion to dismiss, the special master finds the claimed status of the withheld documents as intellectual property records is not conclusively shown on the face of the complaint and attachments. Moreover, as the matter is now fully briefed the arguments to dismiss are subsumed in the arguments to deny the claim on the merits. It is therefore recommended that that the motion to dismiss be denied.

**Requester's Request for Discovery**

{¶7} This is a special statutory proceeding under R.C. 2743.75, which is intended to provide an "expeditious" procedure to resolve public records disputes. R.C. 2743.75(A). To that end, the only required pleadings are the requester's complaint and a combined response to complaint/motion to dismiss from the respondent. R.C. 2743.75(D)(1) and (E)(2). The special master "shall not permit any discovery" but may require additional information or documentation from either party. R.C. 2743.75(E)(3)(a) and (c).

{¶8} On May 21, 2021, the special master ordered Zamlen-Spotts to submit a reply pleading, which she filed on June 7, 2021. Although captioned as a "Reply to Respondent's *Response to Complaint and* Motion to Dismiss," Zamlen-Spotts made only arguments opposing the motion to dismiss. She referred to future development of facts and concluded with a request that "the court deny the relief requested in Respondent's Motion to Dismiss and allow this matter to proceed to discovery." Pursuant to R.C. 2743.75(E)(3)(a), Zamlen-Spotts' request for discovery is DENIED.

**Exception Claimed**

{¶9} CSU asserts that the requested records are "intellectual property records," excepted from public disclosure by R.C. 149.43(A)(1)(m). As used in that statute,

> "Intellectual property record" means a record, other than a financial or administrative record, that is produced or collected by or for faculty or staff of a state institution of higher learning in the conduct of or as a result of study or research on an educational, commercial, scientific, artistic, technical, or scholarly issue, regardless of whether the study or research was sponsored by the institution alone or in conjunction with a governmental body or private concern, and that has not been publicly released, published, or patented.

R.C. 149.43(A)(5). CSU must thus show that the individual returned surveys were 1) not financial or administrative records, 2) were produced or collected by or for faculty or staff of a state institution of higher learning, 3) for one of the listed study or research purposes, and 4) have not been publicly released, published, or patented.

{¶10} CSU asserts that the returned surveys are not financial or administrative records, and that CSU is a state institution of higher learning within the meaning of R.C. 149.43(A)(5). (Response at 4-5.) Zamlen-Spotts does not contest these assertions, and they are not otherwise contradicted by the record. The first and second elements of the exception are thus established.

{¶11} CSU next asserts that the returned surveys were collected in the conduct of study and research on educational, commercial, and technical issues in conjunction with a governmental body, the Chester Township Trustees. (*Id.* at 5-7.) CSU relies on the terms of the Sponsored Research Agreement between CSU's Center for Community Planning and Development and the Trustees (*Id.*, Exh. A) and the affidavit of Program Manager Kirby Date (*Id.*, Exh. C) to support this assertion. CSU has filed copies of the resulting Chester Township Community Questionnaire Summary Report (*Id.*, Exh. B), and the Chester Township Community Questionnaire. (*Id.*, Exh. D.) Zamlen-Spotts argues that these records were not collected in the conduct of study or research on "an educational, commercial, scientific, artistic, technical, or scholarly

issue," but rather in the conduct of study or research on "a civic or governmental issue." (Reply at 2.)

{¶12} In *Walker v. Ohio State Univ. Bd. of Trustees*, 10th Dist. Franklin No. 09AP-748, 2010-Ohio-373, a state university conducted a similar public opinion survey to evaluate the direction of civic and governmental planning by a public agency.[2] *Id.* at ¶ 2-4. The requester in *Walker* did not dispute that the university survey responses were collected in the conduct of "study or research on an educational, commercial, scientific, artistic, technical, or scholarly issue," *Id.* at ¶ 15. While the *Walker* court did not rule directly on the issue, relator's acceptance of this factor lends support to CSU's assertion that a survey involving "civic or governmental" issues can fall under one or more of the R.C. 149.43(A)(5) study or research issues.

{¶13} Assessing CSU's asserted study or research issues in their commonly understood meanings, the evidence shows first that the study and research included educational issues such as applied learning for the student involved. (Response at 6; Exh. A at 1, Exh. C – Date Aff. at ¶ 9-10.) Second, there is no evidence the project involved "study or research on a commercial issue" in the common usage of relating to commerce, profit, or private business.[3] The fact that the University was compensated for conducting the research does not mean that the subject of the research itself was "on a commercial issue." Third, the evidence shows that the study involved technical issues of special and practical knowledge of community planning and development, as well as the techniques used to elicit and compile survey responses. (Response at 5-7; Exh. C – Date Aff. at ¶ 1-4, 7, 9, 11, 13-15). CSU has shown by clear and convincing evidence

---

[2] The Muskingum Water Conservancy District is a public office for the purposes of public records litigation. *State ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 5th Dist. Tuscarawas No. 2013 AP 06 0024, 2014-Ohio-1222. The District was identified as a political subdivision in *Muskingum Watershed Conservancy Dis. v. Harper*, 5th Dist. Guernsey No. 16 CA 11, 2017-Ohio-1346, ¶ 26-39.

[3] *See* https://www.merriam-webster.com/dictionary/commercial (Accessed June 29, 2021.)

that the questionnaire responses were produced or collected as a result of study or research on educational and technical issues.

{¶14} Finally, CSU asserts that the individual handwritten questionnaires were not shared with anyone outside the research team and thus were not publicly released, published or patented. (Response at 7-9.) Zamlen-Spotts counters that "the data and responses inherent in such records were publicly released or published - through the report generated by Respondent." (Reply at 2.) The evidence shows that quantitative data from fixed-choice responses to the questionnaire was compiled, analyzed, and graphically presented in the summary report. (Response at 8; Exh. C – Date Aff. at ¶ 11, 13-14; Exh. B.) In *Walker*, "cumulative tallies of the raw data were presented in a written report to the district." *Id.* at ¶ 4. The Tenth District declined to find that a written report containing processed data constituted public release or publication of the data source –paper questionnaire forms. *Id.* at ¶ 19-21. Zamlen-Spotts cites no case law to the contrary. The relevant portions of open-ended responses were transcribed and included in the report. (Response at 8; Exh. C – Date Aff. at ¶ 9, 12-14; Exh. B, Appendices B and C.) While the responses quoted verbatim were thereby publicly released and published, the waiver as to that data does not extend to any other information in the paper questionnaires, under the rationale in *Walker*.

{¶15} The paper questionnaires contained additional, undisclosed information or metadata in the form of handwriting characteristics and grouped demographic data that could be used to identify individual respondents. (Response at 3, 8-10; Exh. C – Date Aff. at ¶ 6-11, 16-17.) CSU asserts that a standard technique used for community public opinion surveys is a promise of confidentiality, which results in more candid participant responses. (Response at 7-10; Exh. C – Date Aff. at ¶ 12-13, 19.)  Accordingly, the survey questionnaire contained no fields for name, address, or other direct personal identifiers, and the introduction advised that participants were not being asked for their identity. (Response at 7-10; Exh. C – Date Aff. at ¶ 6-11, 16-17; Exh. D.) CSU excluded

any participant identifiers from the summary report. (Response at 8; Exh. B; Exh. C – Date Aff. at ¶ 12.) To be clear, the promise and practice of confidentiality do not themselves constitute a public records exception and are significant only as evidence that the withheld paper questionnaires have not "been publicly released, published, or patented."

{¶16} In this case the paper questionnaires were appropriately controlled, secured, and shared only among the CSU staff directly connected with the project. (Response at 7-9; Exh. C – Date Aff. at ¶ 6-11, 16-17.) They were not shared at any stage with Chester Township or the general public. (Response at 8; Exh. C – Date Aff. at ¶ 6-10, 12, 16-17.) The special master concludes that the original paper questionnaire responses have not been "publicly released, published, or patented" within the meaning of R.C. 149.43(A)(5).

{¶17} CSU separately asserts that survey participants have a personal "reasonable expectation of privacy" protecting release of their identities. (Response at 7-9; Exh. C – Date Aff. at ¶ 18.) However, no contractual promise of confidentiality can alter the public nature of otherwise public records. *State ex rel. Gannett Satellite Info. Network, Inc. v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997). Nor has CSU identified an existing constitutional right of privacy for persons responding to public opinion surveys. The special master concludes that CSU has not shown by clear and convincing evidence that the withheld records are subject to any public records exception based upon a right of privacy.

{¶18} The special master finds that CSU has met its burden of proof to show that the requested records fall squarely within the definition of intellectual property records under R.C. 149.43(A)(5), and properly denied Zamlen-Spott's request on that basis.

**Conclusion**

{¶19} Upon consideration of the pleadings, affidavit, and attachments, the special master recommends the court issue an order denying requester's claim for disclosure of

the requested records. It is recommended that costs be assessed to requester.

{¶20} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFF CLARK
Special Master

**Filed July 1, 2021**
**Sent to S.C. Reporter 8/6/21**